[S. F. No. 3035.　Department One.—October 7, 1904.]

MARIAN G. GREEN, Respondent, v. A. C. SOULE, Appellant.

Negligence of Independent Contractor and Subcontractor—Building Contractor not Liable.—A building contractor is not liable for the negligence of another independent contractor employed by the owner to do the plumbing and sewer work; nor is he liable for the negligence of an independent subcontractor employed by himself to do the plastering for the building for a specified sum, who agreed to furnish all the materials and labor required to complete the subcontract, and who had the entire charge of that part of the work and sole control of the workmen engaged therein.

Id.—Question of Law—Improper Refusal of Instructions.—Where the undisputed evidence showed that the plasterer was an independent contractor as to the building contractor defendant, and the subcontract did not require him to place his materials in any dangerous position, the meaning and effect of the contract and the relations of the parties to it were a question of law for the court; and it is error to refuse requested instructions that the subcontractor was an independent contractor as to the defendant, and that if the jury believed the injury complained of was the result of negligence on the part of the subcontractor, they must find for the defendant.

Id.—Supervision of Architect—Right of Employer to Make Alterations.—The fact that the work was to be done under the supervision of an architect, and that the employer had the right to make alterations, deviations, and omissions from the contract, does not change the relation of an independent contractor or subcontractor to that of a mere servant.

Id.—Support of Verdict — Conflicting Evidence — Duty of Trial Court.—Where the evidence in support of the verdict, though not very satisfactory, is sufficient to raise a conflict, its sufficiency to support the verdict cannot be decided by this court; but it is the duty of the judge of the trial court to grant a new trial where the verdict is against the weight of the evidence, according to his independent judgment, notwithstanding a conflict therein.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Robert Ash, for Appellant.

E. A. Bridgford, John Ralph Wilson, and Burrell G. White, for Respondent.

SHAW, J.—The action is to recover damages for personal injuries arising from the negligence of the defendant. The defendant appeals from the judgment and from an order denying his motion for a new trial.

The complaint alleges that one Charles Gebhardt made a contract in writing with the defendant for the erection of certain buildings at the corner of Eddy and Franklin streets in San Francisco; that there was an ordinance of the city and county of San Francisco providing that any person by whom, or under whose immediate authority as principal contractor or employer, any portion of a public street should be made dangerous should while the danger continued maintain a good and substantial barrier around the dangerous portion of the street, and cause to be maintained during every night from sunset to daylight a lighted lantern at the ends of the dangerous portion of the street; that the defendant in the erection of said building caused to be placed on the southerly line of Eddy Street, in front of the building, a mortar-bed, boxes, barriers, and other building materials extending from the sidewalk to within four feet of the car-track in the center of the street, the said obstructions being from two to three feet in height and rendering the street dangerous to travelers; that on the night of December 7, 1900, the defendant, having failed to erect any barrier or place any lights at said obstructions, the plaintiff, passing along the street in a buggy, ran over the obstructions and was thereby thrown out of her vehicle and injured. The evidence showed without conflict that Gebhardt, the owner of the premises, made two separate contracts for the erection of different parts of the building, one with the defendant, and the other with one C. G. Stuhr. By the contract with the defendant it was agreed that the defendant should furnish the necessary labor and materials, and perform all the excavations, concrete, brickwork, marble steps, carpenter-work, glass, bell, and electric work, vestibule tiling, plastering, tinning, and ironwork, and "other works shown and described in and by, and in conformity with the plans, drawings, and specifications for the same . . . hereto annexed." The plans and specifications were not introduced

in evidence. It will be observed, however, that the above enumeration does not expressly include the plumbing or sewer-work connected with the building. By the contract with Stuhr it was agreed that Stuhr should furnish the necessary labor and materials and perform and complete all the gasfitting, sewering, plumbing, and other work described in and by, and in conformity with, the plans, drawings, and specifications annexed to the said contract. These plans and specifications were not introduced in evidence. The testimony shows, however, without contradiction that the defendant had nothing whatever to do with the placing of the sewers in the building or with making the excavations necessary for that purpose, and that that part of the work was done under the contract with Stuhr, and not under that made by the defendant.

The evidence shows further that the defendant made a subcontract with D. Leahy, whereby, for a specified sum, Leahy agreed to furnish all the necessary materials and perform all the labor required in the plastering of the building in accordance with the plans and specifications, and that in pursuance of this contract Leahy did the plastering and had the entire charge of that part of the work and sole control of the workmen engaged therein. A number of witnesses for the plaintiff testified that immediately after the accident to the plaintiff they examined the street in front of the building and found obstructions in the street from two to three feet high, extending from the sidewalk to within two or three feet of the street-car track in the center of the street, consisting of lumber, barrels, boxes, mortar-beds, and other building materials. None of them gave any statement concerning the relative location of the different materials mentioned, nor did they expressly state that they were all mixed together in the pile, and on these points, so far as the plaintiff's testimony was concerned, the jury were left to conjecture. For the defendant several witnesses testified positively that they examined the premises the following morning; that there was a pile of broken concrete and pieces of asphaltum, taken from the street pavement in digging the trench for the sewer connection, extending along the east side of the trench from the sidewalk to within two or three feet of the car-track, and from two to three feet high, and that there were no other materials

or obstructions in the street except the mortar-box used by
the plastering contractor, Leahy, and this box did not extend
into the street to exceed five feet from the sidewalk.    The
sewer-trench had been filled in to the level of the street the
day before the accident, but according to the testimony of
these witnesses the concrete and asphaltum had been left in
the pile alongside the trench.    The distance between the curb
and the nearest rail of the car-track was shown to be about
seventeen feet.    It was also shown without conflict that the
defendant had nothing to do with the employment of the men
engaged under Leahy, the subcontractor for the plastering,
nor any control of them while engaged in the work.

The court instructed the jury that "An independent con-
tractor is a person who is employed in the exercise of an in-
dependent and distinct employment, and not under the
immediate control or supervision of the employer," and that
if they should find that the injury complained of was caused
by an obstruction erected by Leahy in carrying out a contract
between himself and the defendant, and should also find that
Leahy was an independent contractor, then they should ren-
der a verdict for the defendant.    Instructions numbered
seven and eight asked by the defendant and refused by the
court were as follows: "7.  A subcontractor under an original
contractor may be an independent contractor as to such origi-
nal contractor, and I instruct you that D. Leahy, the con-
tractor for plastering the building, was an independent
contractor as to the defendant, A. C. Soule, when he became
the contractor for the work of plastering the house.    8. If
you believe from the evidence that the injury complained of
was the result of negligence on the part of the subcontractor,
D. Leahy, then you must find for the defendant."

We think the refusal of these instructions was error.  "An
independent contractor is one who, in rendering services,
exercises an independent employment or occupation, and rep-
resents his employer only as to the results of his work, and
not as to the means whereby it is to be accomplished. . . .
The chief consideration which determines one to be an inde-
pendent contractor is the fact that the employer has no right
of control as to the mode of doing the work contracted for."
(16 Am. & Eng. Ency. of Law, 2d ed., p. 187.)  The fact that
the work is to be done under the supervision of an architect,

or that the employer has the right to make alterations, deviations, additions, and omissions from the contract, does not change the relation from that of an independent contractor to that of a mere servant. (16 Am. & Eng. Ency. of Law, 2d ed., p. 187; *Frassi* v. *McDonald*, 122 Cal. 402.) These principles apply "likewise in favor of the principal contractor as against any liability on his part for the acts of a subcontractor, or of a subcontractor's servants." (16 Am. & Eng. Ency. of Law, 2d ed., p. 194, and cases cited.) There was nothing in the contract for the plastering which contemplated or required that the person doing the plastering should place his materials on the street or sidewalk, and therefore it could not be contended that the contract itself was for the creation of an obstruction in the street which would constitute a nuisance. There was no conflict in the evidence with respect to the terms of the contract between the defendant, as the principal contractor, and Leahy, as subcontractor for the plastering, nor were its terms in any respect ambiguous or uncertain so as to require any fact to be established in order to determine its effect. The meaning and effect of the contract, and the relation of the parties to it thereby created, consequently became a question of law to be decided by the court. (11 Am. & Eng. Ency. of Plead. & Prac., pp. 78, 79, 80, 88, 89.) Under the evidence there can be no question but that Leahy occupied the relation of independent contractor to the defendant. He exercised an independent occupation; his contract required him to bring about the result of plastering the house, and he was left entirely free to select for himself the means and mode of doing the work and the persons to be immediately employed therein, without any control, or right of control, in the defendant. It was therefore the duty of the court, on request, to instruct the jury that Leahy was an independent contractor, and not leave it to the jury to determine according to their own notions the effect of the contract in that respect. (11 Am. & Eng. Ency. of Plead. & Prac., pp. 80, 89.)

The instruction was important because of the vague and unsatisfactory state of the evidence in regard to the character of the obstructions which caused the injury. There was a conflict as to whether or not there were any boxes, barrels, and lumber in the street at the point where the buggy upset, and it was uncertain whether, if in fact there were any such mate-

rial there which caused the injury, such material was a part of that in use by the defendant or a part of that in use by Leahy, the plasterer. There was some evidence that the persons who made the excavation for the sewer connection used lumber belonging to Leahy for the purpose of holding up the sides of the trench while they were digging it, and that the trench was filled in again the day before the accident. The lumber would then be no longer necessary for use in the sewer-work, and it may be that this was the lumber observed by the witnesses for the plaintiff who testified that the obstructions consisted in part of lumber, and that it was carelessly left in the street by Leahy after it was returned to him. The boxes and barrels testified to may also have been those left there by Leahy, and not by the defendant. All these things were questions to be determined by the jury and the instructions requested by the defendant should have been given for their guidance in considering their verdict. For this error the order denying a new trial must be reversed.

It is earnestly contended by the appellant that the evidence was insufficient to justify the verdict. The principal claim as to this point is, that it was proven without conflict that there was at the time of the injury an obstruction made by the sewer contractor, consisting of a pile composed of sand, broken concrete, and pieces of asphalt pavement, extending from the sidewalk to within two or three feet of the car-track, and some two or three feet high alongside of and directly east of the sewer-trench; that the trench itself had been filled up the day before; that all the other obstructions were situated along the street farther to the east; that the plaintiff was driving along the street from west to east, and consequently must have been first struck and upset by the pile of asphaltum and concrete, for which the defendant was in no wise responsible. Some five witnesses for the defendant testified directly that there was such a pile of paving material at that time and place, and that there were no other materials on the street at the point where plaintiff said her buggy was upset. The defendant also testified that there were marks on this pile of material the next morning, showing where the wheel of some vehicle had run upon and over it. The only contradiction of the fact of the existence of this obstruction in the street was the testimony of Cleary, a witness for the

plaintiff, who testified that he was the sewer workman who excavated and filled the sewer-trench; that practically all the sand and concrete taken from the trench were replaced therein, and that the asphaltum was first taken off the top. of the trench and was then piled on the sidewalk.

This evidence, though not very satisfactory, is sufficient to raise a conflict which cannot be decided by this court. If the court below was satisfied that the witnesses for defendant were entitled to equal credit with Cleary, it might well have ordered a new trial. But this court cannot pass upon the credibility of witnesses, and hence cannot interfere upon this ground. We frequently have cause to believe that the judges of the superior court are too reluctant to exercise their power of granting a new trial for insufficiency of the evidence, and too much inclined to acquiesce in a verdict of the jury which does not meet with their own approval. There is a clear and obvious distinction between the duty of a trial court and the duty of an appellate court with respect to the decision of such questions, and it is well established by the decisions of this court. The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. ''Where the decision is against the weight of the evidence it is the duty of that court to grant a new trial.'' (*Irving* v. *Cunningham*, 58 Cal. 309; *Mason* v. *Austin*, 46 Cal. 387; *Hawkins* v. *Abbott*, 40 Cal. 639; *Bjorman* v. *Fort Bragg Co.*, 92 Cal. 500.) If the judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony. He has had the same opportunity as the jury to observe the manner of the witnesses, and to decide upon their credibility, and it is his duty to see that the verdict is not clearly against the weight of the evidence. He must exercise a wholesome and discreet supervision over the jury in this respect.'" (*Dickey* v. *Davis*, 39 Cal. 569.) ''There, although there may be what to us, judging from the cold record, seems a substantial conflict in the evidence, the court having heard the evidence, and having had ample opportunity to judge as to the demeanor, manner, and credibility of the witnesses, may, if he is dissatisfied with the verdict, and is of the opinion that

it is clearly against the weight of the evidence, set it aside and grant a new trial. The judge of the superior court is in a position to determine between the apparent and the real, to detect the fallacy of specious testimony which may have misled the jury, but which his wider experience enables him to readily comprehend." (*Bates* v. *Howard,* 105 Cal. 178.) Of course, the judge should give due respect to the verdict of the jury, and may sometimes properly deny a new trial in cases where if submitted to him without a jury he might upon the evidence have made a different decision. He must be clearly satisfied that the verdict is wrong; otherwise, he should let it stand. But in considering the question upon the motion he must act upon his own judgment as to the effect of the evidence. The parties are entitled to the judgment of the jury in rendering a verdict, in the first instance; but upon a motion for a new trial they are equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence.

We have considered the case upon the theory that the answer sufficiently denies the allegation that the defendant placed in the street the mortar-beds, boxes, and barrels extending from the sidewalk to within four feet of the car-track. We have done so because the plaintiff does not raise the question and the case appears to have been tried upon the theory that the denial is sufficient. As the question may be raised upon another trial, the attention of counsel is directed to the form of the denial, so that, if objection is then made, the defendant may amend as he may be advised.

The order denying the new trial is reversed, the judgment vacated, and the cause remanded for further proceedings.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.