[Civ. No. 861. Fourth Appellate District.—August 6, 1931.]

LUVADA R. LEWIS et al., Appellants, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation) et al., Respondents.

CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation) et al., Respondents.

Root, Bettin & Painter, Vernon Bettin, D. Howard Painter, Conant Wait, Kenneth Rhodes, Jess E. Stephens and Erwin P. Werner, City Attorneys, and Frederich Von Schrader, Deputy City Attorney, for Appellants.

W. I. Gilbert for Respondents.

GRIFFIN, J., *pro tem.*—The above-entitled action, *Luvada R. Lewis* v. *Southern California Edison Company and Harry Plotz,* was an action brought by appellants for the wrongful death of Henry E. Lewis, husband of Luvada R. Lewis and father of Mary Lewis. The action entitled "*City of Los Angeles* v. *Southern California Edison Company and Harry Plotz*" was an action brought by the City of Los Angeles against respondents under the provisions of the Workmen's Compensation Law to recover a lien on any judgment rendered in favor of appellants Luvada R. Lewis and Mary Lewis by reason of an award granted under the Workmen's Compensation Law because of the death of deceased in the course of his employment by the City of Los Angeles. The two actions were consolidated for trial in the superior court and a stipulation was entered into by and between the respective parties hereto that the same be consolidated on appeal.

On the twenty-fifth day of February, 1927, the deceased, Henry E. Lewis, was employed by the engineering department of the City of Los Angeles as a swamper on a certain garbage truck being operated in a northerly direction on North Doheny Drive in the City of Los Angeles. In the performance of his duties he rode on the left running-board of the truck and would step down from the running-board

with a tub in his hand into which he emptied pails of garbage which were placed along the curb. The crew on the truck on which deceased was working on the morning of the accident consisted of Clarence H. Wade, the driver, and Mora Higgins, another swamper who was operating on the right-hand side of the truck. The running-boards of the truck were from twelve to eighteen inches from the ground.

North Doheny Drive is a public highway in the City of Los Angeles. At the point where the accident occurred and for about two blocks in both directions it is concrete paved, has a grade of approximately nine per cent, from curb to curb is thirty feet wide, and at the point of the accident was covered with a small amount of loose sand and gravel. On the morning in question, passenger automobiles were parked on the east and west sides of the street. The cars on the west side were headed downgrade in a southerly direction with the right front wheels against the curb and the right rear wheels about two feet from the curb. The cars on the east side of the street were parked parallel to the curb with the right front and right rear wheels about the same distance from the curb. The space between these parked cars was approximately sixteen feet. The garbage truck was approximately six feet wide measured from hub cap to hub cap. The driver's seat was partially inclosed with a cab. A Ford automobile of the type driven by Mr. Plohr for the Southern California Edison Company, was approximately six feet wide. The total available clearance for the two cars to pass at the point of the accident was therefore approximately four feet.

On the morning of the accident the truck on which deceased was working was proceeding in a northerly direction on North Doheny Drive. Prior to the accident, the respondent, Harry Plohr, passed the truck from the rear on the left-hand side and proceeded in a northerly direction to a point north of the scene of the accident, turned around and started down North Doheny Drive in a southerly direction. In the meantime the truck was moving northerly at the rate of about four miles per hour. The deceased was standing on the left running-board of the garbage truck at the time Mr. Plohr passed him going north. When the Ford, returning in a southerly direction reached a point

somewhere between eight and ninety feet north of the scene of the accident, deceased stepped off the running-board of the truck on to the center line of the street facing in a westerly direction, turned slightly to the south to reach for his tub, which was hanging from the side of the truck, and in so doing was placed in such a position that his back was toward the north. Respondent's automobile which was being driven at a speed of approximately thirty miles per hour entered the space between the truck and the cars parked on the west side of the street, struck deceased on the right leg and hurled him about ten or twelve feet. Mr. Plohr applied his brakes immediately after the impact and slid in a southerly direction for approximately seventy-two feet, finally coming to a full stop with his right front wheel over the west curb of the street, his tires leaving a solid skid mark for that entire distance. He gave no warning of his approach, nor did he attempt to slacken his speed before negotiating the narrow passageway between the truck and the cars parked along the west side of the street. Deceased suffered a concussion of the brain, from which he died.

At the time of the accident deceased was earning about $35 per week and had an expectancy of life of approximately twenty-one years. His widow and daughter sought to recover the sum of $25,000 damages for his wrongful death. The jury returned a verdict in favor of the appellants Luvada R. Lewis and Mary Lewis for the sum of $7,500. By reason of the stipulation entered into by the respective parties, the City of Los Angeles was given a lien on said judgment in the sum of $4,836.90.

Under all the grounds set forth in section 657 of the Code of Civil Procedure, except that of "accident or surprise, which ordinary prudence could not have guarded against", the respondents filed notices of intention to move for a new trial in both actions. These motions were granted by the court "on the grounds stated in the notice of intention to move for a new trial". Appellants are appealing from the order granting the new trial.

Respondents pleaded as a defense to each of the actions, contributory negligence on the part of the deceased. Their notices of intention to move for new trial stated the following grounds: "1. Insufficiency of the evidence to justify the verdict. 2. That the verdict is against the law.

3. That the verdict is against the evidence. 4. That the verdict is against the law and the evidence. 5. Errors of law occurring at the trial and excepted to by said defendants. 6. Excessive damages appearing to have been given under the influence of passion or prejudice. 7. Newly discovered evidence material for the defendants which it could not with reasonable diligence have discovered and produced at the trial. 8. Irregularity in the proceedings of the adverse parties, to wit: the plaintiffs, by which the defendants were prevented from having a fair trial. 9. Misconduct of the jury.''

After the hearing on the motion, the minutes of the court disclose the following order: ''Motion for new trial on the part of the defendants, having heretofore been heard and submitted, it is ordered that the said motion be granted *on all the grounds stated in the notice of intention to move for a new trial.*'' (Italics ours.)

One of the contentions of appellants is that the court erred in granting the motion for new trial. They contend that the order above set out granting a new trial, was a general one and did not specify that it was granted on the grounds that the evidence was insufficient to justify and sustain the verdict, therefore, under the amendment of 1919 (Stats. 1919, p. 141, amending sec. 657, Code Civ. Proc., by adding the last clause thereto), it must be presumed on this appeal that the order was not based on that ground. It is clear from the above amendment that we are precluded from considering the question of whether or not the evidence is sufficient to sustain the verdict, *if the order granting the new trial was a general order,* unless the evidence was insufficient in law and without material conflict in any material point. (*Biaggi* v. *Ramont,* 189 Cal. 675–677 [209 Pac. 892]; *Yoakam* v. *Hogan,* 198 Cal. 16 [243 Pac. 21]; *Wilkinson* v. *United Railroads,* 195 Cal. 185 [232 Pac. 131]; *Tasker* v. *Cochrane,* 94 Cal. App. 361 [271 Pac. 503, 504].) In *Tasker* v. *Cochrane, supra,* defendant's motion for new trial contained similar specifications of error separately stated. The order of the court granting a new trial was in these words: ''The motion for new trial having heretofore been submitted, the court at this time grants the motion for a new trial.'' In that case it was held that such an order was general and failed to specify the ground. In the case

before us the order specifies the grounds by reference to the notice of intention to move for new trial which does set forth the grounds in detail and which notice is made a part of the record.

We are of the opinion that such an order is not a general order, but that it can be determined therefrom on appeal, that the order granting a new trial was granted also on the ground of insufficiency of the evidence to sustain the verdict. (*Randall* v. *Duff*, 79 Cal. 115–123 [3 L. R. A. 754, 756, 19 Pac. 532, 21 Pac. 610].)

Appellants further contend that in granting the motion for new trial the court abused its discretion for the reason that the evidence relative to the negligence of the respondent was conclusive and was undisputed, and the verdict rendered was the only verdict which could have been rendered on the facts submitted to the jury.

█ No affidavits were filed by respondents in support of their motion based on the first four grounds mentioned in section 657 of the Code of Civil Procedure, and no error under these specifications having been pointed out they will be disregarded. (Secs. 658, 659, Code Civ. Proc.) Hence the only grounds upon which the motion could have been properly granted, which this court will consider, are (a) excessive damages, (b) error in law occurring at the trial, (e) insufficiency of the evidence to justify the verdict, (d) that the verdict is against the law.

From a reading of the reporter's transcript it appears that most of the important and material facts were undisputed. █ The evidence produced in the deposition of the defendant Plohr introduced in evidence by appellants under section 2055 of the Code of Civil Procedure did tend to contradict some of the material points as to the speed of his car and his actions. Appellants contend that as the deposition of this defendant was received in evidence on their motion under section 2055 of the Code of Civil Procedure, they were not bound by such evidence. The case of *Schwarz* v. *Schwarz*, 93 Cal. App. 252 [269 Pac. 755, 757], supports this contention. The court there said: "The conflict arose in the testimony of the defendant who was called by the plaintiff under section 2055, Code of Civil Procedure. As to such testimony the plaintiff was not bound, but, in any event, the conflict should be disregarded." (*Grantham* v.

*Ordway,* 40 Cal. App. 758–764 [182 Pac. 73] ; *Weir* v. *New York Life Ins. Co.,* 91 Cal. App. 222 [266 Pac. 996].)

■ Wade, the driver of the garbage truck, was the only witness that testified as to the speed of defendants' car. He estimated the speed to be thirty miles per hour. He further testified that deceased stepped off the running-board when defendants' car was from eight to ten feet from him; later he testified it was fifteen feet. Then he visited the scene of the accident and returned to the stand and changed his testimony, stating that the distance was about ninety feet. He further testified that the left wheels of the truck were a foot east of the center of the street, and on a previous occasion testified they were but four inches east of it and stated that it was only an estimate.

The only other eye-witness to the accident was Higgins, the other workman, who was on the right or easterly side of the truck picking up garbage from the right-hand curb. He had just stepped off the truck when deceased was hit. He admitted he did not see the collision or impact.

The witness Plohr did not testify at the trial. The defense apparently believed they might rely upon his deposition, which was offered in evidence by plaintiffs under section 2055, to establish their claim. In his deposition he stated: ''Well the truck started to pull away from the curb and just when I got to where the truck was, the whole front of the truck had been pulled out from the rear of another machine that was parked in front of, and I managed to get—it was quite narrow and there was a space about two feet between the corner of the truck and the other side, and it was about six inches from my fender to their cars, and just as I passed the front of this truck, this fellow jumped off of the truck and he made about two steps and he jumped off so fast that it just happened in an instant, my left fender hit him.'' He testified further that he was going about twenty miles per hour and that as he approached the truck he blew his horn once or twice.

Anthony Miller, a witness for the defense, testified that Wade did not know that deceased had been struck until he (Miller) had called to him a second time to stop, that one of his men had been hit, and also that Wade told him then that he did not see the collision and did not know how it happened.

Mark M. Christianson, testifying for the defense, stated that Wade had told him that he did not see the collision and did not know the man had been struck.

Maytor Hoppenyan, who lived across the street from the point of the accident, testifying for the defense, stated that both Wade and Higgins told him at the time that they did not know how it occurred as they did not see it. He testified that the body of deceased was lying on the west side of the street about halfway between the center of the road and the curb which would be in the path of defendant's car, and that by reason of the gravel on the pavement the length of the skid marks was no indication of the rate of speed.

From the analysis of the evidence it will be observed that Mr. Wade was the only one who claimed to have seen the approach of respondent Plohr, and that Wade was engaged in the act of driving the truck, seated in a seat where his vision was so obstructed by the cab of the truck that it would appear unlikely that he was able to see the deceased stationed on the running-board back of him. Accordingly, in the final analysis of its decision on the question of the granting of the motion for new trial, the court after having seen and heard this witness testify and after a calm and dispassionate consideration of his evidence, which he repeatedly corrected and contradicted, and which was impeached by at least three witnesses, felt that its weight was not sufficiently convincing upon material questions to justify the verdict of the jury.

In weighing the evidence on a motion for new trial the trial court may have been justified in believing the deceased guilty of contributory negligence as a matter of law, even considering the surrounding circumstances and the evidence of Wade himself.

"Q. And what did he start to do after he (Lewis) got down from the truck? A. He reached for a tub, hanging on the left-hand side, just back of the cab. Q. How far from the truck was he when he was struck by this southbound automobile? A. Just on the ground. Q. Just stepped off? A. Yes, to get his tub. Q. Where is this tub located? A. Hanging on the same side he was on. Q. Was your truck moving at the time? A. Yes, moving slowly and in low gear. We drive very slowly, picking up as we go.

Q. He stepped off the running board to take the tub when the automobile struck him? A. Say, he got off the truck like this, and here is the tub, like this, and the fellow hit him, like this, and that throwed him like that. Q. Now, when Mr. Lewis got down from the truck onto the street, what was the position of his foot in relation to the center of the street? A. Well, I would say on the mark, on the center of the street. Q. And just as he stepped off, he was struck, wasn't he? A. Yes. Q. As a matter of fact, he stepped off within two or three feet—of the front end of the automobile, didn't he; is that right? A. When he stepped off— Q. Answer my question, please, if he did not step off within two or three feet of the front end of the Ford automobile, and then he was struck. A. Yes.''

The foregoing testimony of Mr. Wade corroborates the testimony of Mr. Plohr on this point. The record shows that the witness Wade demonstrated to the court and jury the manner in which the deceased acted at the time and place of the accident. The court therefore was able to determine a fact that is not before this court.

■ The rule is firmly established that the trial court is not only authorized, but that it is its duty to grant a new trial whenever in its opinion the evidence upon which the former decision was made is insufficient to justify the decision. Its action in granting a new trial upon this ground is so far a matter within its discretion that, if there is any appreciable conflict in the evidence, it is not open to review in this court. (*Kauffman* v. *Maier,* 94 Cal. 269 [18 L. R. A. 124, 29 Pac. 481]; *Domico* v. *Casassa,* 101 Cal. 411 [35 Pac. 1024]; *Harrison* v. *Sutter St. R. Co.,* 116 Cal. 156 [47 Pac. 1019].)

Upon the question as to whether deceased was guilty of contributory negligence there was apparently some conflict in the evidence. This, however, was not sufficient to prevent the trial court from granting a new trial on the ground of the insufficiency of the evidence. It is established by numerous decisions in this state that although there may be some conflict in the testimony it is the duty of the trial court to grant a new trial on such grounds whenever the judge is convinced that the verdict is clearly against the weight of the evidence and his action in that regard will not be disturbed unless it is apparent that there has been

an abuse of the discretion confided to him. (*Green* v. *Soule,* 145 Cal. 96, 102 [78 Pac. 337]; *Bates* v. *Howard,* 105 Cal. 173–178 [38 Pac. 715]; *Mock* v. *Los Angeles Traction Co.,* 139 Cal. 616 [73 Pac. 455].) The record on this appeal affords no basis for any claim that there was any such abuse of discretion in this case.

We are aware of the decision in the case of *State Compensation Ins. Fund* v. *J. W. Scamell et al.,* 73 Cal. App. 285 [238 Pac. 780], upon which respondents rely, which holds that one engaged in work upon the streets, such as street sweeper, may assume that a driver will give a signal or warning so that an accident may be avoided, and that the workmen's rights cannot be determined by the same rules applicable to pedestrians generally, and modifies the stop-look-and-listen rule accordingly. We believe such rules do not apply if the workman, as in this case indicated, without notice, suddenly jumps from the left running-board of the garbage truck in front of the approaching car.

The last ground is that the verdict is against the law. The instructions given and those refused are made a part of the record on appeal. Our attention has not been called to any error that would justify us in holding that the verdict was contrary to, or in conflict with, the instructions given the jury by the court. It is clear that the order granting a new trial on this ground cannot be sustained.

It is therefore manifest that regardless of other reasons that may exist, the order granting a new trial on the ground of insufficiency of the evidence to sustain the verdict must be, and is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 28, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 5, 1931.