[Civ. No. 10314.   Second Appellate District, Division Two.—September 3, 1935.]

JOHN A. BERKOWITZ, Respondent, v. F. E. PELTON et al., Defendants; METRO–GOLDWYN–MAYER DIS-TRIBUTING CORPORATION, Appellant.

SHEPPARD BERKOWITZ, Respondent, v. F. E. PELTON et al., Defendants; METRO–GOLDWYN–MAYER DIS-TRIBUTING CORPORATION, Appellant.

W. I. Gilbert for Appellant.

Lasher B. Gallagher for Respondents.

FRICKE, J., *pro tem.*—These actions, tried together, were brought to recover damages for personal injuries suffered by plaintiffs as the result of the negligence of defendant Scarcliffe whose automobile, while he was performing services for appellant, collided with that in which the plaintiffs were riding.

Appellant's principal point is that there is no evidence to support the conclusion that Scarcliffe was a servant of appellant and not an independent contractor.

Appellant has failed to print in its brief either by direct quotation or in substance sufficient portions of the evidence to present the question as to the nature and character of the employment. Respondent, however, has presented sufficient of the record to disclose among other facts that Scarcliffe some years previous had solicited "a job" from appellant and was told that he could have one. He bought a car and reported for work and was on call inside the studio gates during the hours and at the special place prescribed by appellant. During the entire time of his employment, a period of several years, the work he did was under the control of the transportation dispatcher employed by appellant. Whenever his services were required he was called. He was paid either at a stipulated sum per mile traveled or at a stipulated sum per hour, it being agreed that his compensation should be calculated according to whichever method of computation resulted in the larger sum. His orders were upon the same form used for all other drivers for the studio. On return from a trip he had to check in to the office of appellant. When not rendering service, he remained at a special place inside the studio walls, designated for drivers and automobiles. His employment was

not limited to local transportation but included trips to San Francisco and other places in the state and on such occasions appellant paid his hotel and garage expenses. The employment was not based upon any written contract but rested solely upon his applying for a job, being told to go to work and his continued employment thereafter. When the per diem of appellant's employees was increased under the National Recovery Act code, Scarcliffe's per diem was also increased. When he desired to be absent on a personal matter, such as going to a football game, he always first asked the transportation manager for his approval. On a few occasions when he had to substitute another driver of the car in place of himself, he secured the approval of a transportation dispatcher because "I could not put anybody on that car and have them in the studio working there".

Difficulty is sometimes experienced in drawing the distinction between an independent contractor and a servant but this difficulty is more apparent than real. "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter" (Civ. Code, sec. 2009) while "an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished. . . . The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337] ; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 417 [156 Pac. 491] ; *Chapman* v. *Edwards,* 133 Cal. App. 72, 77 [24 Pac. (2d) 211] and note in 78 A. L. R. 725.) The case of *Chapman* v. *Edwards, supra,* is in principle strongly analogous to the case at bar. There, as here, the hours of labor and wage paid were the same as for other employees doing the same kind of work, the work and the manner of performance were under the control of the person for whom the work was done and the employee used his own motor vehicle. Appellant here was not securing the mere performance of labor but the personal services of Scarcliffe. The latter would not have complied

with his agreement had he furnished his automobile with any person as the driver.

The facts herein related lead to but one possible conclusion, that it was the personal services of Scarcliffe under the direction and control of appellant, for which appellant contracted. This is further borne out by the fact that the records of Scarcliffe's trips were kept in appellant's office where all drivers had to check in upon their return; that before absenting himself from work for a purely personal purpose or when it became necessary to use a substitute driver, Scarcliffe first secured the approval of the appellant; and that his per diem rate of compensation was increased when the National Recovery Act went into effect. We find here ample evidence, even without further recourse to the record, to sustain the conclusion that Scarcliffe was employed in the capacity of a servant and employee and not as an independent contractor.

Appellant urges that there is no proof that the employment was by Metro-Goldwyn-Mayer Corporation. While another corporation, Metro-Goldwyn-Mayer Distributing Corporation, was named in the action, it neither was served nor appeared in the action. Throughout the trial the employer of Scarcliffe was never referred to by its correct full name but in every instance witnesses and attorneys used the abbreviations "Metro-Goldwyn Mayer", "Metro Goldwyn Mayer Studios" or "M.G.M." While there would have been a greater technical nicety had each witness and each attorney, when referring to appellant, stated its name in full, it is obvious that each of the abbreviated designations were used and understood by all persons concerned in the trial, including the court and jury, as referring to the appellant.

The judgments are affirmed.

Stephens, P. J., concurred.

CRAIL, J., Dissenting.—I dissent. I am not convinced on the question of the relationship of master and servant between the appellant and the defendant Scarcliffe.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 25, 1935, and an ap-

plication by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 31, 1935.