[Civ. No. 17069.   First Dist., Div. Two.   May 1, 1957.]

CHARLES L. SABIN, Appellant, v. UNION OIL COMPANY (a Corporation), Respondent.

P. H. McCarthy, Jr., F. Nason O'Hara and Herbert S. Johnson for Appellant.

Ricksen, Freeman, Hogan & Vendt for Respondent.

DOOLING, J.—Plaintiff appeals from a judgment of nonsuit. Plaintiff was an employee of Fluor Corporation, Ltd. (hereafter called Fluor). Fluor had a contract with defendant Union Oil Company of California (hereafter called Union) under which Fluor was bound to service and maintain the chimneys and flues in Union's refinery at Oleum.

The heating unit in which the injury to plaintiff occurred had been shut down for 11 days when on April 29, 1952, plaintiff, under the direction of George Clark, the foreman in charge for Fluor, entered through a manhole to repair a damper. To reach the damper it was necessary to cross an open space 6 feet wide and 7 to 7½ feet above the floor of the chamber. A board or plank 8 feet long and less than 2 feet in width had been laid across this opening over which it was necessary to pass. Clark and one O'Brien, shutdown supervisor of Union, had passed twice over this board earlier in the day when O'Brien had pointed out the damper to Clark and instructed him to repair it. In passing over the plank Clark noticed that it was loose and tipped somewhat.

Before plaintiff entered the manhole, Clark testified: "I told him there was one plank in there that was not very steady." Plaintiff denied hearing this. When plaintiff crawled onto the plank it tilted and precipitated him to the floor below.

Plaintiff testified that when he crawled through the manhole onto the plank it was so dark that he could not see the plank or walls. There were two lights burning in the flue but they were about 22 feet from the manhole.

Clark testified that it was the practice for Fluor employees to place the planks and the lights in flues to be repaired by

Fluor and there is no evidence that Union took any part in placing the plank or lights in this particular flue.

Appellant admits that it is the general rule that when property is turned over by the owner to an independent contractor to do work thereon the owner is not liable to third persons for the negligence of the independent contractor. (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902]; *Green* v. *Soule,* 145 Cal. 96 [78 P. 337].) However appellant seeks to bring this case within certain exceptions to this general rule, i.e., 1. where the employee is injured by some condition of the owner's premises over which the owner retains control (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225 [282 P.2d 697]) or 2. where the owner interferes with or assumes to direct the employee in the manner or method of performing the work (*Revels* v. *Southern Calif. Edison Co.*, 113 Cal.App.2d 673 [248 P.2d 986]) the owner will be liable.

The evidence shows that in practice the maintenance and repair work was done by Fluor only on units that had been taken out of operation and Union did no more than indicate to Fluor that the unit was available to Fluor and the character of work to be done. It seems clear under the authorities that the activity of O'Brien in pointing out the damper to be repaired to Clark and directing him to repair it did not bring Union within either of these exceptions. In *McDonald* v. *Shell Oil Co., supra,* the court said at page 790 of 44 Cal.2d:

"However, the owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract —including the right to inspect [citation], the right to stop the work [citation], the right to make suggestions or recommendations as to details of the work [citation], the right to prescribe alterations or deviations in the work [citation]— without changing the relationship from that of owner and independent contractor or the duties arising from that relationship." What O'Brien did in pointing out the damper and directing its repairs falls well within these limits.

Appellant, however, relies upon the provisions of section 13.0 of the contract between Union and Fluor to bring the case within the exceptions. That section of the contract reads:

"All materials, workmanship and construction methods shall comply with the codes, ordinances, and rules of the governing bodies having jurisdiction. Contractor shall comply

with all federal, state, local *and owner's orders, rules and regulations governing safety and safe performance of work.* Contractor shall comply with all owner's rules governing conduct of contractor's personnel within owner's property." (Emphasis ours.)

It is appellant's theory that, particularly by the emphasized portion of this section, Union retained control over the manner of doing the work insofar as "safety and safe performance of work" was concerned. It is respondent's theory that this was not a reservation of control but only created a contract obligation on Fluor to obey such "orders, rules and regulations" as Union might give or promulgate governing these matters, and that a violation of its terms by Flour would be a breach of its contract to be enforced by Union as any other breach of contract by appropriate legal proceedings. Neither party has cited us any case construing the effect of a contract provision of this character.

There is no evidence that in practice Union ever assumed to interfere in any way with the manner in which Fluor had carried out its contract but there is likewise no evidence of any prior breach by Fluor of any of the terms of section 13.0 of the contract, so that in practice it does not appear that a test of the practical construction of these provisions by the parties ever occurred. Union had adopted certain safety rules which were communicated to Fluor. They dealt chiefly with the avoidance of fire hazards and did not otherwise concern the matter of safe working conditions for Fluor's employees. The question thus presents one of the construction of paragraph 13.0 on its face.

The General Industry Safety Orders of the Division of Industrial Safety require elevated working levels more than 4 feet above the floor to be not less than 2 feet wide and runways in such position to be guarded by a railing (Order No. 3237); and adequate illumination to secure the safety of employees (Order No. 3242).

Paragraph 13.0 bound Fluor by its contract to obey these orders, but the existence of this contract obligation does not answer the question posed: Did Union by this paragraph reserve to itself the right to control Fluor's operations in these particulars? We have concluded that it did not. While the second sentence of the paragraph binds Fluor to follow safety "orders, rules and regulations" of the owner, the same sentence also binds Fluor to comply with federal, state and local "orders, rules and regulations" as well. Thus "owner's

orders, rules and regulations'' must be construed not to refer to a particular order as to a particular operation, but to general orders, rules and regulations similar to those that might be promulgated by a public authority for the control of all operations falling within their scope. We cannot find in the general language of paragraph 13.0 a reservation of the right of the immediate control and direction of the operations of Fluor which would be necessary to make Union liable for Fluor's negligence. If Union had intended to reserve this power it would seem that it would have done so by more apt and direct language indicating such reservation.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied May 31, 1957, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1957. Carter, J., was of the opinion that the petition should be granted.