[Civ. No. 17900.    First Dist., Div. One.    July 29, 1959.]

KAROL LYN BEDFORD et al., Appellants, v. BECHTEL CORPORATION (a Corporation) et al., Respondents; and six consolidated cases.

Bruce Walkup, Dan L. Garrett, Jr., and Cyril Viadro for Appellants.

Bledsoe, Smith, Cathcart, Johnson & Phelps and Wilbur J. Russ for Respondents.

BRAY, P. J.—Plaintiffs are six employees and the widow and a child of a deceased employee of Consolidated Western Steel which was hired as an independent contractor to erect certain oil storage tanks for Pacific Gas and Electric Company. The injuries occurred as a result of the manner in which Consolidated Western Steel used its equipment during the course of construction. Plaintiffs contend that the defendants Pacific Gas and Electric Company and Bechtel Corporation are liable to them for this claimed negligence on the part of Consolidated Western Steel. The case was tried before a court and jury. At the end of the plaintiffs' case the court granted motions for nonsuit upon the ground that plaintiffs

had failed to prove the violation of any duty owed by the defendants.

*The sole question upon this appeal is whether or not either of the defendants owed a duty to any of these employees of Consolidated.*

### The Contracts and the Accident

The Pacific Gas and Electric Company entered into a contract with Bechtel Corporation to design and construct a steam electric power plant near Morro Bay. It was contemplated by the parties that Bechtel might have some of the work done by subcontractors and that the Pacific Gas and Electric Company might let out some of the work directly to contractors.

The Pacific Gas and Electric Company entered into a contract with Consolidated Western Steel Division wherein it was agreed that "Contractor will at its own risk and expense perform the work hereinafter described and, except as herein otherwise provided, will furnish all labor, equipment and materials required therefor: To furnish, fabricate and erect two (2) fuel oil storage tanks for the Company's Morro Bay steam plant. . . . All work shall be performed in accordance with Specification 4360 A, Drawing 410511-7, and Contractor's proposal of December 18, 1953."

It was further agreed in part as follows:

"Contractor [Consolidated Western Steel Division] is an independent contractor, and all persons employed by Contractor in connection herewith will be employees of Contractor, and not employees of Company [P.G. & E.] or Constructor [Bechtel Corp.] in any respect.

"Bechtel Corporation as Engineer and Constructor for Company will act in behalf of Company and all questions or claims by Contractor shall be handled through the Constructor.

"All work shall be subject to general supervision and inspection by Constructor, which may exercise such control of the work as is required to safeguard the interests of the Company. All inspections as to quality of materials furnished and work performed, will be made by the Constructor's representative, who shall have authority to reject unsatisfactory work or materials. Any subcontractor or any person employed by the Contractor who is deemed by the Constructor to be incompetent shall be removed from the job, at the request of the Constructor."

"11. Safety Precautions:

"(a) The Contractor shall plan and conduct his work so as to safeguard adequately all persons from injury, and all property from damage.

"(b) In planning and maintaining safe working conditions and safety facilities, the Contractor shall give due consideration to the following:

"(1) The Constructor will be required to maintain in efficient order and operate without interruption such portions of the plant and equipment as must be placed in operation prior to completion of the entire station.

"(2) Construction work by others may be carried on in conjunction with the work of this Contractor and frequently may occupy the same working area.

"(c) To enforce the intent of these specifications, the Constructor may require the Contractor to install additional safeguards and observe such special safety precautions as appear to be necessary. Special instructions given by the Constructor shall not relieve Contractor of its responsibility to maintain safe and efficient working conditions."

"12. Scaffolding:

"The contractor shall not use any scaffolding or other temporary elevated structures for the support of workmen or materials that have been furnished or erected by the Constructor or by the other Contractors unless authorized by the Constructor so to do. The Contractor shall pass upon the safety of all such structures before using and shall assume all risk and responsibility in using same whether the structures are provided by the Constructor or others."

"14. Insurance and Indemnity:

"(a) Contractor shall indemnify Company and Constructor against any and all loss, damage and liability for injury or harm to person or property resulting from, arising out of or in any way connected with the performance hereof, excepting only such injury or harm as may be caused solely by the fault or negligence of either Company or Constructor, or both."

Plaintiffs, employees of Consolidated, were engaged in the construction of a fuel oil storage tank at Morro Bay, when they were injured. The tank was one of two being built by Consolidated for Pacific Gas and Electric under the above mentioned contracts. The finished tanks were to be 195 feet in diameter and 32 feet high. The accident occurred on August 25, 1954, at approximately 11 a.m. There was little or no

wind and the weather was good. (The details relating to the construction are technical and difficult to describe. The following is generally what occurred.) Work on the tanks had begun in June of 1954. By August 25th, one tank had been completed, except for the roof, and Consolidated was working on the top ring of the second tank.

The top ring consisted of 18 plates, each weighing in excess of one ton and approximately 32 feet long and 8 feet high. These plates were in place and had been welded along the vertical seams (with the exception of one joint). In preparation for the welding of the horizontal seam, the ring had to be aligned. The fitting and alignment was to be accomplished with a "bull" (a U-shaped pneumatic device weighing approximately one ton) which was guided around the top of the ring and hammered the ring into place. In connection with this operation a workman would precede the "bull" by 10 or 15 feet and knock out the wedges and spacers which held the plate in position. Working immediately behind the "bull," a welder would tack or spot weld the horizontal seams together until such time as they could be welded by the automatic welder.

All the plaintiffs were then at work on the ring though none had anything to do with the operation of the "bull." At the time of the accident, six of the plaintiffs were working on the outside surface of the tank and plaintiff Benninger was on a catwalk inside of the tank. The operation of the "bull" was sufficient to shake the ring and cause it to vibrate. The "bull" had been in operation about three hours and had covered approximately one-third of the inside circumference when just ahead of the "bull," several plates tipped inward and began to peel off. The falling plates hit the staging on the inside of the tank and caused most of the ring to collapse and fall into the bottom of the tank. This accident occasioned the injuries upon which these actions were brought.

There is evidence tending to indicate that the accident could have been averted with the use of proper precautions. Expert testimony was introduced to show that in the construction of tanks of unusual size, problems of instability are acute and that necessary stabilization can be achieved through the use of additional support (guy wires).

DEFENDANTS VIOLATED No DUTY OWED PLAINTIFFS

1. *The contracts created no duty.*

■ Plaintiffs' first theory is that the authority which Con-

solidated gave to Bechtel to "require" Consolidated "to install additional safeguards and observe such special safety precautions as appear to be necessary" (§ 11(c) of the contract) imposed a duty upon Bechtel to exercise that authority by so instructing Consolidated whenever safeguards and safety precautions additional to those being observed by Consolidated seemed necessary—a duty to be exercised by Bechtel for the benefit of all persons who might come near the site of Consolidated's operations, including Consolidated's own employees.

Additionally to that theory, plaintiffs contend that defendants knew or should have known that the method Consolidated was using to erect the tanks was unsafe, and therefore defendants had a duty to require Consolidated to take the necessary precautions.

Plaintiffs' first theory would require a strained construction of the authority thus granted. It ignores the fact that by the same contract Consolidated was the primary obligor (§ 11 (a)). Bechtel was to exercise *general* supervision and inspection to "safeguard the interests of the Company." The very authority under discussion was given "to enforce the intent of these specifications," and special instructions given by Bechtel were not to relieve Consolidated of its "responsibility to maintain safe and efficient working conditions" (§ 11(c)).

These factors plus the express declaration that Consolidated is an "independent contractor" and that all persons employed by it are its employees and not employees of Pacific Gas and Electric or of Bechtel and the promise of Consolidated to indemnify Pacific Gas and Electric and Bechtel from liability for injury except such injury as may be caused *solely* by the fault or negligence of Pacific Gas and Electric or Bechtel, negative any such strained construction as plaintiffs would have us put upon this contract.

The Pacific Gas and Electric did not reserve unto itself or Bechtel the right of control as to the manner or details as to how the component parts of either of these two tanks were to be put together, nor did either of them direct or interfere in any manner with the actual physical construction of the tanks. Consolidated, its officers and employees were given complete control over the site where the tanks were to be erected. They by the work procedures which they adopted and used created the only hazards which the plaintiffs encountered.

Generally the rule is that an owner or a general contractor is not answerable for the negligence of an independent con-

tractor. ■ That rule is succinctly expressed in *Gardner* v. *Stonestown Corp.*, 145 Cal.App.2d 405, at 408 [302 P.2d 674] :
"The mere relationship of owner and independent contractor does not make the owner liable for the independent contractor's negligent acts in performing the details of the work contracted for. (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 788 [285 P.2d 902] ; *Barrabee* v. *Crescenta Mutual Water Co.*, 88 Cal.App.2d 192, 196 [198 P.2d 558].)"

■ "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished. . . . ■ The general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work. (*Green* v. *Soule*, 145 Cal. 96, 99-100 [78 P. 337] ). ■ An owner is not liable for injuries resulting from defective appliances unless he has supplied them or has the privilege of selecting them or the materials out of which they are made . . . or unless he exercises active control over the man employed or the operations of the equipment used by the independent contractor . . ." (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 788-789 [285 P. 2d 902].)

There are exceptions to the general rule. These are set forth in the McDonald case:

"Various factual situations in which an owner may be liable for injuries to the employee of the independent contractor should be distinguished: (1) This is not a case where the employee of the independent contractor was injured by some condition of the owner's premises over which the owner remained in control, and where the owner's duties to the employee were those owing to a business invitee. . . . (2) Nor is this a case where the owner furnished the equipment or was obligated by contract to do so, and the equipment proved to be defective, causing injury to the employee of the independent contractor. . . . (3) Finally, this is not a case where the owner actively interfered with or arbitrarily assumed to direct the employees of the independent contractor as to the manner and method of performing the work. . . . Likewise distinguishable is *Snow* v. *Marian Realty Co.*, 212 Cal. 622 [299 P. 720], where the owner's liability for damages stemmed not from responsibility for the negligent acts of the independent

contractors but from the allowance of work on its property constituting a nuisance." (Pp. 790 and 791 of 44 Cal.2d.)

Obviously the facts in our case do not bring it within any of the above exceptions to the general rule. Additionally to the exceptions stated in the McDonald case, there is one more exception, which also is not applicable to our case. That is that a public utility is, as primary obligor, under a nondelegable duty imposed by or pursuant to law and hence is liable for injuries due to negligence of an independent contractor. (See *Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912].)

The decision of the McDonald case, *supra,* is determinative of this case. There the contract between the Shell Oil Company and an independent contractor to recover certain casing from, and to abandon, an oil well on Shell property, is surprisingly like the contracts in our case as to the provisions which plaintiffs contend cast a duty on Pacific Gas and Electric and Bechtel to protect Consolidated's employees, and the arguments made by the plaintiff in that case are significantly like those here. There the control of the work of the contractor was in fact greater than was that of defendants in our case. "Plaintiff argues that Shell retained control over the methods and manner of performance of the work by Owens' crew because defendant Neuhaus, its general production foreman, testified that he was in charge of the abandonment of the oil well in question and had the equipment under his observation; that Shell always had a working production foreman on the job, though he never gave any 'orders or directions to any man on the job' but dealt directly with Owens' foreman; that the Shell foreman and Owens received the same work sheets; that Shell had authority under its contract to stop Owens if it considered the work unsatisfactory in any respect; that after the accident Shell conducted an investigation and its committee recommended the use of a catline clamp to replace riding the rope on the cathead, which safety device was thereafter installed by Owens' employees. . . . Finally, plaintiff cites his own testimony as to his personal observation of a visit made to Owens' well-pulling rig by a Shell foreman; that the latter criticized the way in which the casing had been piled, stating to Owens' driller, 'You know better than that, how to stack that casing'; that the Shell foreman then procured a truck and moved the casing." (Pp. 789-790.)

In discussing those contentions the court said (p. 790) : "However, the owner may retain a broad general power of

supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract— including the right to inspect (*Callan* v. *Bull,* 113 Cal. 593, 598-599 [45 P. 1017]), the right to stop the work (*Fay* v. *German General Ben. Soc.,* 163 Cal. 118, 122 [124 P. 844]), the right to make suggestions or recommendations as to details of the work (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 414 [110 P.2d 377]), the right to prescribe alterations or deviations in the work (*Green* v. *Soule, supra,* 145 Cal. 96, 99-100)—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship.''

Applicable to the rights retained by defendants is the following language from that case (p. 790) : ''All of these rights retained by Shell in the exercise of its general supervisory control accord with its interest in the ultimate result of the work without undertaking to direct the 'means whereby it is to be accomplished.' (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 413.)'' The court held that no duty toward the employees of the independent contractor was disclosed.

Plaintiffs contend that the facts of the McDonald case are distinguishable from those in our case because the contracts here contain a clause not in the one in that case, namely, the provision of section 11 (c), above quoted, to the effect that the constructor might require the contractor to ''install additional safeguards and observe such special safety precautions as appear to be necessary.'' This is a difference without a distinction. This right of the constructor in nowise conferred any obligation upon the constructor to exercise such right in favor of employees of the contractor. Moreover, in the McDonald case there was a specific instance where the Shell actually exercised authority over an employee of the contractor in the manner in which the casings were piled, and yet the court held that such fact did not make the Shell liable for injuries to the independent contractor's employee not caused by the action of the Shell.

The rule of the McDonald case was followed in the recent case of *Williams* v. *Fairhaven Cemetery Assn.,* 52 Cal.2d 135 [338 P.2d 392]. There the defendant owned the Santa Ana Hotel. It entered into a written agreement with Santora Company wherein it was agreed that Santora would operate the hotel and would keep and maintain the hotel building in good condition and repair. Santora operated the hotel with

full control and management thereof. The plaintiff, a porter and bellhop employed by Santora, was injured by an explosion of a gas water heater. The court held that Santora was an independent contractor. In holding the defendant not liable to the plaintiff for the injuries, the court quoted from the McDonald case to the effect that the general supervisory right to control the work does not make the hirer of the independent contractor liable to the latter's employee for the contractor's negligent acts in performing the details of the work. The court further said (p. 139): " '. . . An owner is not liable for injuries resulting from defective appliances unless he has supplied them or has the privilege of selecting them or the materials out of which they are made (*Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263, 274-275 [246 P.2d 716]) or unless he exercises active control over the men employed or the operations of the equipment used by the independent contractor. (*Willis* v. *San Bernardino Lbr. & Box Co.*, 82 Cal. App. 751, 756 [256 P. 224].)' (See also *Sabin* v. *Union Oil Co.*, 150 Cal.App.2d 606, 608 [1] [310 P.2d 685].)''

In *Hard* v. *Hollywood Turf Club* (1952), 112 Cal.App.2d 263 [246 P.2d 716], the employees of a painting subcontractor sued the owner and general contractor for injuries received from a defective scaffold supplied by their employer. The court held that although the general contractor had general supervision of the work and knew of the high painting being done on the scaffolding, such contractor owed no duty to the employees of the subcontractor.

The reasoning behind the rule that the general contractor (and the same reasoning applies to the owner) is not liable to the employees of an independent contractor for the latter's negligence, is the same as that set forth in the Hard case, *supra*, 112 Cal.App.2d 263, where the court in discussing the persons included in the word ''employer'' in the ''Act to regulate scaffolding'' (Stats. 1913, ch. 48, §§ 1 and 2, pp. 49-50) said (p. 271): ''. . . to impose the duty upon the general contractor directly to oversee all labor being performed and to inspect every device imported for use by the workmen on a particular construction and to impose nondelegable duties upon him to enforce all statutory safety provisions would be to place an extremely onerous burden upon him who has the general control over the ultimate result of the labor done yet without control or management of the means utilized to achieve the purpose planned.''

*Raich* v. *Aldon Const. Co.*, 129 Cal.App.2d 278 [276 P.2d 822], is not opposed to the rule here stated. That case dealt with the first exception stated in the McDonald case to the general rule, namely, where a duty exists on behalf of the one in control of a dangerous condition of premises to the employees of an independent contractor to provide such employees a safe place in which to work.

*Sullivan* v. *Shell Oil Co.* (1956), 234 F.2d 733, likewise comes within the second exception stated in the McDonald case. There the court stated the rule as to the exception to be: "Employees of an independent contractor injured in the performance of a contract between their employer and the owner, are on the premises by the owner's invitation express or implied, and the owner owes a duty to warn against hidden dangers of which he knows or reasonably ought to know and of which they are unaware [citations]; and the owner-occupier owes to them the duty to furnish them a safe place in which to work." (P. 738.) The court then went on to say (p. 738): ". . . the owner-occupier is not liable when the injuries result from a danger obvious to the injured party." It distinguished the case from the McDonald case by saying that in the latter case "the injury to the employee resulted from defective equipment, supplied and operated by the contractor-employer." (P. 738, footnote.) Under the facts of our case the question of either Bechtel or Pacific Gas and Electric providing an unsafe place for Consolidated's employees to work is not involved, nor is there any question of there being a hidden danger.

*Dow* v. *Holly Manufacturing Co.*, 49 Cal.2d 720 [321 P.2d 736] (contractor built a home with a defective heater and the owner resold it; the contractor was held liable to subsequent purchaser of the house) is not in point. It stands solely for the rule that a contractor who delivers or supplies a defective product is liable to third persons for negligence. Such rule is not applicable to the facts of this case.

2. *Knowledge of danger created no duty.*

The evidence shows that representatives and inspectors of both Pacific Gas and Electric and Bechtel observed the work practically daily. There was testimony that the necessary stability of the tank during erection could have been achieved easily by supporting each plate ahead of the bull with a guy wire and using strongbacks on the horizontal seam as well as on the vertical seam. From the experience of some, at least, of

the Bechtel and Pacific Gas and Electric representatives, it could be inferred that both companies should have known that the manner of erection of the tanks was not safe. However, that fact does not make the defendants liable. No duty toward the independent contractor's employees arises thereby.

In *Richards* v. *Stanley* (1954), 43 Cal.2d 60 [271 P.2d 23], the court quoted from *Routh* v. *Quinn*, 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215] : " 'It is an elementary principle that an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member.' " (P. 63.)

Plaintiffs contend that the fact that a jury could have found that defendants should have known of the negligent method of construction distinguishes this case from the McDonald case, *Hard* v. *Hollywood Turf Club, supra,* 112 Cal.App.2d 263, and the other cases holding that neither the owner nor general contractor is liable for injuries to the employees of an independent contractor for injuries due to the negligence of the latter  Plaintiffs admit that there is no case in which it is held that mere knowledge of the negligence of the independent contractor creates any duty on the part of the owner or general contractor toward said employees. A somewhat similar contention was made in *Schwerdtfeger* v. *State*, 148 Cal.App.2d 335 [306 P.2d 960], where it was claimed that the state's right to inspect conferred a duty to inspect in favor of invitees of the tenant. In denying any such duty we said (p. 350) : "Undoubtedly, if the wharfinger believed or knew the cable was dangerous, he could have ordered it removed. But this power did not create a duty to inspect and maintain." See *Goodman* v. *Harris*, 40 Cal.2d 254 [253 P.2d 447], where the evidence shows that the Pacific Gas and Electric, the lessor of the premises upon which a defective gas heater belonging to the lessee, was located, inspected the premises on several occasions and presumably must have seen the heater. There, the court held that the lessor was not liable for a death caused by the defective heater.

Although the question of the owner's knowledge or imputed knowledge is not directly discussed in *McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, implicit in the facts and the decision of the court is the fact that the owner should have known of the negligent manner in which the injured man's employer was performing the work.

Plaintiffs suggest that Restatement of Torts, sections 414 and 416, are applicable to the case here on appeal. In *Hard* v. *Hollywood Turf Club, supra*, 112 Cal.App.2d 263, 273, the court in holding that the owner of the land was not liable to employees of the independent contractor, held that section 414 of the Restatement of Torts was not applicable. The court emphasized that section 414 can only apply when the owner remains in control of the activity or work. Section 416 provides that the employer of an independent contractor will be liable for injuries to "others" where the work is of a type involving a "peculiar risk." This section is not applicable since the construction of the tanks would not appear to be work involving a "peculiar risk" or inherently dangerous. Moreover, section 414 and section 416, which provide that the employer shall be liable to "others," do not include employees of the independent contractor. An employee is not a third person within the meaning of the rule. See *Salmon* v. *Kansas City* (1912), 241 Mo. 14 [145 S.W. 16, 39 L.R.A. N.S. 328]; *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St. 103 [113 N.E.2d 629]; also *Humble Oil & Refining Co.* v. *Bell* (Tex.Civ.App., 1943), 180 S.W.2d 970, 975, where it was stated: "Let it be assumed also that the work of blasting was inherently dangerous. With these assumptions let us determine the measure of duty owed by defendant, at all times bearing in mind its relationship to plaintiff. In regard to the liability of the employer of an independent contractor where the work contracted for is inherently dangerous, the rule is that the employer may be held liable to a third person for the negligence of the independent contractor . . . Is an employee of an independent contractor a third person within the meaning of the rule? It is our opinion that such employee is not."

The judgments are affirmed.

Tobriner, J. and Dooling, J.,* concurred.

A petition for a rehearing was denied August 25, 1959, and appellants' petition for a hearing by the Supreme Court was denied September 22, 1959.

---

*Assigned by Chairman of Judicial Council.