VAN FLEET, J.,    DE HAVEN, J.,<br>
GAROUTTE, J.,    HARRISON, J.,<br>
FITZGERALD, J.

Rehearing denied.

---

[No. 15481.    Department Two—December 22, 1894.]

## GEORGE BATES, APPELLANT, *v.* CHARLES WEBB HOWARD, RESPONDENT.

ORDER GRANTING NEW TRIAL—SUBSTANTIAL CONFLICT OF EVIDENCE.—The superior court is authorized to grant a new trial, notwithstanding a substantial conflict in the evidence, where it is of the opinion that the verdict or decision of the court is against the weight of the evidence.

ID.—DISCRETION.—A wide discretion is accorded to trial courts in the disposition of motions for new trial; and an order granting a new trial for insufficiency of the evidence to support the findings will not be disturbed where the findings are against the weight of the evidence.

VENDOR AND PURCHASER—CONTRACT FOR SALE OF LAND—MARKETABLE TITLE—PROBATE PROCEEDINGS.—Under a contract for the sale of land and the delivery of a good and sufficient conveyance thereof by a grant, bargain, and sale deed from all the owners, a marketable title is shown in the heirs of a deceased person in whom the title was vested in his lifetime, where a settlement of the estate in the probate court and the final decree of distribution in that court have served to release the property from the condition to which the estate of a deceased person was subject.

ID.—SOURCE OF TITLE OF HEIRS.—The title of the heirs of a deceased person to real estate owned by him does not originate in the decree of dis-

tribution, but comes to them directly from their ancestor, subject only to the control of the probate court, and the possession of an administrator appointed by that court for the purpose of administration.

ID.—CONSTRUCTION OF CODE—DECLARATIVE PROVISION.—Section 1384 of the Civil Code, as adopted in 1884, is declarative of the law as previously interpreted by this court.

ID.—ESTATES OF DECEASED PERSONS—NOTICE OF HEARING OF PETITION FOR ADMINISTRATION.—The ten days' notice required under section 1373 of the Code of Civil Procedure, of the hearing of a petition for letters of administration, is properly given by a posting of notice on the twelfth day of the month, giving notice of a hearing on the twenty-second day of the same month.

ID.—DECREE OF DISTRIBUTION—DESCRIPTION OF PROPERTY—MISTAKE IN COURSES — SURPLUSAGE — CONVEYANCE FROM HEIRS — ESTOPPEL.— Where the land distributed to the heirs of a deceased person is described in the decree of distribution as the whole of the Redding ranch, and as being the property conveyed by a certain recorded deed, referring to the book and pages of the record, such decree sufficiently describes the property distributed, notwithstanding a mistake in the decree in the designation of two of the courses; and the erroneous courses, being apparent on their face when applied to the land, and the description being perfect without them, will be rejected as surplusage, and a conveyance from the heirs having the full, legal, and equitable title to the land conveyed to their ancestor, there being no other person or persons in whom any apparent title is legally or equitably vested, will estop the heirs and all other persons to claim through or under them or either of them.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial.

The facts are stated in the opinion of the court.

*H. D. Talcott,* for Appellant.

*Fox, Kellogg & King,* and *Kellogg & King,* for Respondent.

The COURT.—This is an appeal from an order of the superior court in and for the city and county of San Francisco granting a new trial.

On the twenty-seventh day of August, 1887, the defendant made and executed an agreement in writing, of which the following is a copy:

"SAN FRANCISCO, August 27, 1887.

"For and in consideration of the sum of one thousand dollars ($1,000) to me in hand paid, and the receipt

of which I hereby acknowledge, I agree to obtain for George Bates, of Berkeley, a deed to a certain tract of land situated in the county of Alameda, township of Brooklyn, state of California, and more particularly described as follows: A tract bounded on the west by that county road generally known as the Redwood road, on the south by the lands of A. J. Gladding, and on the east by the lands of Brennen and others, and on the north by unknown owners. Said tract of land being that formerly belonging to the O. L. Shafter estate, and described particularly in the final decree of distribution in the estate of O. L. Shafter, deceased in the probate court of Alameda county, containing eighty-eight and twenty-one hundredths ($88\frac{21}{100}$) acre-.

" The following are the terms and conditions of said sale: George Bates shall pay to me a further sum of fifteen hundred dollars ($1,500) on or before Wednesday, August 31, 1887; and a further sum of twenty-two thousand six hundred and thirty-one and twenty-five hundredths dollars ($22,631.25) within forty-five days from the date of this agreement, and thirty thousand dollars ($30,000) within two years from the date of this agreement.

" In consideration of the above I hereby agree to procure, and upon receipt of the said sum of $22,631.25 as hereinbefore mentioned, to deliver to the said George Bates a good and sufficient conveyance by a grant, bargain, and sale deed of said property from all the owners thereof, free of all encumbrances, except that provided for in this agreement.

" The said deferred payment of $30,000 shall be secured by a mortgage on said property, which shall be executed and delivered upon the delivery of said deed as above provided, and shall bear interest at the rate of six (6) per cent per annum until paid.

" I further agree to release from the effect of said mortgage any part of the said tract which may hereafter be sold by said George Bates, on payment to me of a sum not less than three-quarters of the purchase money

received by said George Bates for sale of such part; provided that he shall not sell any part of the east half of the said tract for less than four hundred dollars ($400) an acre, nor any part of the west half of the said tract for less than eight hundred dollars ($800).

"CHARLES WEBB HOWARD."

The cause was tried by the court without the intervention of a jury, written findings filed, which are responsive to the issues made by the pleadings, and in the following language:

"That on August 27, 1887, at the city and county of San Francisco, defendant made and entered into the agreement, in writing, with plaintiff, set forth in the complaint herein, and the sum of one thousand dollars was duly paid by plaintiff to defendant in pursuance of the terms of said agreement, and as part of the consideration for the procuring of a good and sufficient title to the real property therein described.

" 2. That it was also understood and agreed by and between the parties in the said instrument named, at the time of its execution, that the defendant should promptly furnish to said plaintiff, for his approval, an abstract of title to the premises aforesaid, but that none was furnished to plaintiff until about the tenth day of September, 1887, when defendant submitted to plaintiff, for his examination and approval, an abstract of the title to said property, which he proposed and designed to offer to plaintiff in fulfillment of the terms and conditions of said agreement, and for the money considerations paid and to be paid by plaintiff. That plaintiff was advised by his counsel that the title to said premises and property was imperfect, and not a marketable title, all of which defendant was properly notified, but neglected and refused to perfect said title, and make the same marketable, as requested by said plaintiff.

" 3. That upon the neglect and refusal of said plaintiff to perfect and make the title to said property marketable, plaintiff demanded of said defendant the repayment of the said sum of one thousand dollars, paid

by plaintiff to defendant on account and in pursuance of the terms of said written agreement; that defendant then refused, and has ever since refused, to repay to said defendant the said sum of one thousand dollars, or any part thereof, and has never repaid any part of the same.

" 4. That plaintiff was at all times ready and willing to do and perform every thing in said written agreement contained on his part to be done and performed, until the defendant refused to perfect and make good and marketable the title to said property.

" 5. That time was not of the essence of said written agreement; that the plaintiff complied with all the terms and conditions of said written agreement on his part to be kept and performed, so far as he was called upon so to do either in law or equity.

" 6. That the title to said property was not, during any of the time or times herein mentioned, a marketable title, and defendant took no measures to make said title marketable, and has not complied with the terms and conditions of the said agreement on his part to be kept and performed.

" 7. That defendant, by his conduct and actions, rendered unnecessary the further fulfillment of the terms of said written agreement on the part of said plaintiff."

From the facts thus found the court concluded, as matter of law: 1. That the title to the property was not marketable; 2. That plaintiff was entitled to recover from the defendant one thousand dollars and interest, for which sum judgment was entered.

Defendant in due time moved for a new trial upon the ground of the insufficiency of the evidence to support the facts as found, errors of law occurring at the trial, etc., specifying the errors complained of.

The motion was supported by a statement, and, upon a hearing, the motion was granted and a new trial ordered, from which order, as before stated, plaintiff prosecutes this appeal.

As before stated, the motion for a new trial was based upon various grounds, one of which was that the evidence failed to support the findings.

It is a cardinal doctrine of this court, the oft enunciation of which has rendered it monotonous, that where, upon a question of fact, the testimony in the court below involves a substantial conflict, the action of such court below will not be disturbed.

These considerations, however, do not prevail with the *nisi prius* court. There, although there may be what to us, judging from the cold record, seems a substantial conflict in the evidence, the court having heard the evidence, and having had ample opportunity to judge as to the demeanor, manner, and credibility of the witnesses, may, if he is dissatisfied with the verdict, and is of opinion that it is clearly against the weight of evidence, set it aside and grant a new trial. The judge of the superior court is in a position to determine between the apparent and the real, to detect the fallacy of specious testimony which may have misled the jury, but which his wider experience enables him to readily comprehend.

Like considerations apply to cases tried by the court without the intervention of a jury. In the hurry of a trial or in the disposition of cases deductions of fact and conclusions of law may be indulged which, on maturer reflection, do not commend themselves to his judgment, and to say that he is to be bound by hasty or improvident action, as against his more mature judgment, and that, in the face of those wise provisions of the law intended for just such emergencies, is to lose sight of one of the fundamental objects of trials at law, viz., the promotion of justice.

It is for these and other reasons which might be mentioned that a wide discretion is accorded to trial courts in the disposition of motions for new trials. (*Watson* v. *McClay*, 4 Cal. 288; *Weddle* v. *Stark*, 10 Cal. 302; *Burnett* v. *Whitesides*, 15 Cal. 35; *Quinn* v. *Kenyon*, 22 Cal. 82; *O'Brien* v. *Brady*, 23 Cal. 243; *Hall* v. *Bark*

" *Emily Banning*," 33 Cal. 522; *Harrison* v. *Peabody*, 34 Cal. 178; *Phelps* v. *Union C. M. Co.*, 39 Cal. 407; *Pierce* v. *Schaden*, 55 Cal. 406; *Bronner* v. *Wetzlar*, 55 Cal. 419; *Hawkins* v. *Reichert*, 28 Cal. 535; *Dickey* v. *Davis*, 39 Cal. 565; *Mason* v. *Austin*, 46 Cal. 385; *Sherman* v. *Mitchell*, 46 Cal. 576; *Higuerra* v. *Bernal*, 46 Cal. 581.)

We might continue to quote cases coming down to the present time to like effect; but the foregoing are, in all reason, sufficient.

There was a substantial conflict in the evidence upon many of the issues, and, upon some of them at least, the testimony in favor of the plaintiff was by no means conclusive or even satisfactory.

To illustrate: Under the agreement plaintiff paid one thousand dollars down, and was to pay an additional fifteen hundred dollars on the thirty-first day of August, four days after the agreement was made. This he did not pay. The reason given therefor was that defendant had agreed to promptly furnish plaintiff with an abstract of title, and failed to do so until some time in September.

The testimony of plaintiff on this point was that there was an understanding that defendant should furnish an abstract, and that he did it.

Defendant testified in substance that he made no agreement with plaintiff except the one in writing, and added that defendant might subsequently have asked him to furnish an abstract, and he might have consented and done so.

Plaintiff in rebuttal said the abstract, as far as he believed, never came into his hands. That he saw it in the hands of his attorney, and when asked if he ordered it prepared, said he did not remember any thing about it, but was sure he never paid for it.

This was practically all the evidence upon the point, and was the basis upon which the court found that defendant agreed to promptly furnish an abstract, but that none was furnished until September 10, 1887. This is referred to not by reason of its importance, but as a

sample of the uncertainty of the evidence upon many of the issues in the case. In view of these conditions of the evidence the action of the court below in granting a new trial must be upheld.

There is another question, however, which, while it is not absolutely essential to a disposition of the case here, is yet of prime importance in its final disposition, and is certain to arise in any future trial upon the merits.

It is that which relates to the title of the property to which defendant agreed to procure for plaintiff a deed of conveyance. It was to be " a good and sufficient conveyance by a grant, bargain, and sale deed of said property from all the owners thereof, free of all encumbrances except that provided for in this agreement."

It appeared at the trial that the tract of land agreed to be conveyed to plaintiff was conveyed to Oscar L. Shafter May 1, 1869, by John M. Redding and Rose Redding, his wife, by a conveyance in due form, which described it as being "the whole of Redding's ranch," situate, etc., and then describing it by courses and distances, etc., and containing eighty-eight and twenty-one hundredths acres. This description is conceded to be correct.

Oscar L. Shafter died intestate prior to July 12, 1873, leaving as heirs at law a widow and several children. On the twelfth day of July, 1873, James McM. Shafter and Charles Webb Howard filed a petition in due form in the probate court of Alameda, praying to be appointed administrators of the estate of said Oscar L. Shafter.

On the same day an order was made by said court, fixing July 22, 1873, as the day for hearing said petition, and directing ten days' notice of the hearing of said petition to be given by posting, etc. The notice was posted on said twelfth day of July, etc., and a hearing had, and said petitioners appointed administrators on said twenty-second day of July.

Objection No. 1 to the title of the heirs is founded upon the allegation that the notice above mentioned

was not posted *ten days* as required by the statute and order of the court.

Such proceedings were thereafter had in the matter of the estate that in 1885 a final decree of distribution of the real property of said estate to the heirs thereof (naming them and the interest of each therein) was had, which, as the record states, "was regular in form, and regularly and properly distributed the property in dispute, the only question here made under such decree of distribution being as to the description of the property, and that in such decree of distribution this property is described as follows."

Then follows a description stating that it is known as the Redding tract, containing eighty-eight and twenty-one hundredths acres situate, etc., " being the whole of the Redding ranch," and describing it by courses and distances, and further describing it as " being the property conveyed to Oscar L. Shafter by John M. and Rose Redding by deed dated May 1, 1869, recorded in Alameda county, records book 41, pages 192–94."

The description by courses and distances in the decree of distribution is in all respects the same as in the deed to Shafter, except that two courses in the decree are erroneous, the one reading 26° 30″ E., instead of 36° 30″ E., as in the deed, and the other reading 29° west instead of 49° west as in said deed.

The evidence showed without contradiction that since the purchase by said Shafter in 1869 the ranch or land had been in the possession of said Shafter and his heirs, that it was inclosed by a good substantial fence, that all taxes had been paid by them, and that it was generally known as the Redding ranch.

Under these circumstances plaintiff contended in the court below, and as appellant contends here, that the heirs at law of Oscar L. Shafter (from whom it is conceded the conveyance was to come under defendant's agreement) could not convey a valid title to the land in question to plaintiff, and this is the second question presented in relation to said title.

The court below, upon the foregoing facts, which are not disputed, found as a fact and a conclusion of law that the title was not a marketable title, and hence that defendant had not complied with his agreement.

1. The notice posted on the twelfth day of July, giving notice of a hearing of the petition on the twenty-second day of the same month, was sufficient as a ten-day notice under section 1373 of the Code of Civil Procedure.

Section 12 of the Code of Civil Procedure provides that "the time within which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last day is a holiday, and then it is also excluded."

In *Misch* v. *Mayhew*, 51 Cal. 514, section 1116 of the same code, which provided for a notice of three days, was construed by this court, and it was said: "The case is, therefore, covered by section 12 of the same code, and a list served on the 7th of December could properly be relied upon and proven at the trial on the 10th of December." (See, also, *Landregan* v. *Peppin*, 86 Cal. 126, and *Hagenmeyer* v. *Mendocino County*, 82 Cal. 214.)

The second and more important question for consideration relates to the sufficiency of the title vested in the heirs of Oscar L. Shafter to answer the requirement of defendant's agreement.

There is no contention as to the willingness of the heirs to convey, but the question relates to their *power* to do so, viz, their power to convey the land described in defendant's agreement as the land that formerly belonged to the O. L. Shafter estate, and described in the final decree of distribution of said estate.

We assume at the outset that defendant, under his agreement with plaintiff, was bound, not simply to obtain for the latter a conveyance in form, a semblance or muniment of title, but a conveyance of the land itself and the fee simple title thereto. (Civ. Code, sec. 1105.)

When Oscar L. Shafter departed this life in 1873, the title to the land in question being vested in him, such

title at once and by operation of law passed to his heirs, subject only to administration.

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the probate court, and to the possession of any administrator appointed by that court for the purposes of administration." (Civ. Code, sec. 1384; see Code Civ. Proc., sec. 1452.)

Section 1384 of the Civil Code, quoted above, was adopted in its present form in 1884, but is declarative of the law as previously interpreted by this court. (*Brenham* v. *Story*, 39 Cal. 179; *Estate of Donahue*, 36 Cal. 329; *Estate of Woodworth*, 31 Cal. 604; *Chapman* v. *Hollister*, 42 Cal. 463.)

The title of the heirs did not originate in the decree of distribution, but came to them from their ancestor, and the settlement of the estate in the probate court and the final decree of distribution in that court only served to release their property from the conditions to which, as the estate of a deceased person, it was subject.

Waiving all this, however, and waiving the fact that all that defendant had agreed to have conveyed to plaintiff was the land "described particularly in the final decree of distribution," and assuming that the decree of distribution was essential to the end of perfecting the title of the heirs, and we are of opinion that the description therein is amply sufficient to secure that result.

It was described as "the whole of the Redding ranch." It was described as the property purchased by Shafter from Redding and wife by deed dated May 1, 1869, and the place of record thereof specified. That a grant of real property having a descriptive name may be described by such name is elementary. (Civ. Code, sec. 1092.)

The erroneous courses are apparent on their face when applied to the land, for the reason that they do not answer the calls in the deed as to following the boundaries of adjoining owners and the county road.

Under such circumstances, the description being perfect without the erroneous courses, and the latter being apparent, they will be rejected as surplusage.

It was said in *Copertini* v. *Oppermann*, 76 Cal. 186: " The words ' good title' import that the owner has the title, legal and equitable, to all the land, and the words ' defective title,' meaning that the party claiming to own has not the whole title, but some other person has title to a part or portion of the land."

If the heirs of Oscar L. Shafter have not the title, legal and equitable, to the land in question, we are at a loss to determine where it is vested.

Their right to the land, and to every part of it, is evidenced by paper title of record in the county where the land is situate, and there being no other person or persons in whom any apparent title, legal or equitable, is vested, their conveyance of the property duly executed will estop them and all persons claiming or to claim through or under them or either of them.

The order appealed from is affirmed.