[Civ. No. 8750. Third Dist. Oct. 11, 1956.]

WILLIAM CLINKSCALE et al., Plaintiffs and Appellants, v. W. J. GERMERSHAUSEN, Defendant and Appellant.

Robert M. Cole for Plaintiffs and Appellants.

Russell A. Harris and Douglas B. McDonald for Defendant and Appellant.

SCHOTTKY, J.—Plaintiffs commenced an action for damages for personal injuries and property damage sustained by plaintiff Ida Clinkscale and for property damage sustained

by her husband, plaintiff William Clinkscale, when the automobile which he was driving and in which she was a passenger became involved in an accident with an automobile driven by defendant, W. J. Germershausen. Plaintiffs appeal from that portion of the judgment entered in favor of the defendant upon a jury verdict, and defendant appeals from the same judgment in favor of the cross-defendant, William Clinkscale. A nonsuit was granted to cross-defendant Ida Clinkscale, and the cross-complainant, W. J. Germershausen, has not appealed from that order.

At the time the accident occurred, the plaintiffs were traveling east on United States Highway 40 over the Yolo Causeway, which is a form of bridge over a bypass and runs in a general easterly and westerly direction, being 3 to 4 miles in length. The highway is at least 15 to 20 feet from the ground and consists of four perfectly straight and level traffic lanes, two in each direction, each divided by a white line with a double line in the center. At the south side of the causeway is a 2-foot walkway separated from the pavement by a wooden barrier. The plaintiffs had traveled to San Francisco on the morning of the accident and on the way down, near Fairfield, the car sputtered and the temperature of the engine was abnormally high, so they stopped at a filling station to put water in the radiator.

After driving around in San Francisco for a few hours, the plaintiffs left to return to their residence in Broderick, Yolo County, California. They did not notice any trouble with the car until it stopped in the middle of the Yolo Causeway, in the outside eastbound lane against the wooden barrier.

It was a sunny Sunday afternoon in June, around 5 p.m., and the traffic was heavy in all four lanes. Clinkscale set his emergency brake, looked under the hood and discovered that smoke was coming off the engine and the radiator was steaming. He checked the temperature gauge and found it to be at the boiling point. He had not checked the gauge before crossing the causeway, nor at the time he passed a service station located on the highway at Davis, nor at any time since leaving the filling station at Fairfield on the way to San Francisco. After unsuccessfully trying to start the car, he stationed himself at the left rear fender to flag cars around his stopped automobile. Ida Clinkscale remained seated in the right front seat.

Clinkscale directed about 20 to 25 cars by his stopped car before it was struck in the rear by the automobile driven by

the defendant who was approaching from the west traveling east in the outside or southerly lane. Defendant had remained in this lane at all times prior to the accident and had been following several cars. He did not observe cars fanning out to pass the plaintiffs' car and the traffic was moving evenly. The defendant was following the car ahead of him by approximately 50 feet when the car swerved sharply to the left into the inside lane just prior to the time the defendant saw the plaintiffs' parked automobile. The defendant determined that it was unsafe for him to swerve into the inside lane because of the traffic passing by, going in the same direction, and being only several car lengths away from the plaintiffs' car, he applied his brakes hard and skidded into the rear of it. The skid marks were 65 feet in length up to the point of impact and continued on approximately 12 feet. The defendant's car stopped so that it was resting on the walkway which is located on the south side of the causeway with the right front next to the iron rail which serves as a barrier at the extreme south edge. As a result of the impact the Clinkscale automobile was propelled 400 feet east on the causeway.

Clinkscale testified that when he first saw defendant's car it was traveling at an estimated rate of speed of 55 to 60 miles per hour. However, the defendant testified that he kept a constant speed of approximately 45 miles per hour in crossing the causeway. Defendant also testified that although he saw Clinkscale standing at the left rear of his automobile prior to the accident, he did not notice him make any movement.

Appellants' first major contention is that the evidence is insufficient to support the judgment in favor of respondent because respondent was negligent as a matter of law and appellants were free from negligence as a matter of law. We are unable to agree with this contention.

It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be

deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded.

In support of their contention that defendant was negligent as a matter of law, plaintiffs argue that the defendant did not exercise ordinary care to observe traffic conditions on the causeway ahead of him; that he was following the vehicle ahead of him more closely than was reasonable and prudent, in violation of section 531 of the Vehicle Code; that according to the testimony of the traffic officer defendant stated that he was looking at the rice checks and was tired and sleepy; that because of these things defendant did not see the Clinkscale car until he was too close to stop in order to avoid an accident.

Plaintiffs rely strongly on the case of *Huetter* v. *Andrews,* 91 Cal.App.2d 142 [204 P.2d 655], where it was held that the conduct of defendant in driving into plaintiff's car ahead constituted negligence as a matter of law. However, the facts in the Huetter case were quite different from those in the instant case. In the Huetter case the defendant had a clear view of the highway, with no vehicles intervening, for 850 feet preceding the point of impact with plaintiff's car. Plaintiff had stopped, backed onto the shoulder, and was executing a left turn into a crossover on a divided, four-lane highway. Defendant drove this 850 feet looking straight ahead but did not see plaintiff's automobile until he was within 75 to 100 feet of it. He still continued a straight course and left no skid marks until he struck plaintiff's car broadside at a speed of 35 to 40 miles an hour.

As a further point in support of the plaintiffs' position that the defendant was guilty of negligence as a matter of law, it is contended that the defendant violated section 531 of the California Vehicle Code which provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway." Plaintiffs argue that defendant was traveling too close to the automobile ahead of him because he was not able to stop in time. However, *Landrum* v. *Severin,* 37 Cal.2d 24 [230 P.2d 337], states the rule in its headnote to be: "It is for the jury to determine whether, within the terms of Veh. Code, § 531(a), a motorist followed

another automobile at a distance less than what was reasonable and prudent, except where the space between the vehicles was such as to establish whether there was a violation of such provision as a matter of law.'' (See also *Driver* v. *Norman*, 106 Cal.App.2d 725 [236 P.2d 6], and *Giles* v. *Happely*, 123 Cal.App.2d 894 [267 P.2d 1051].) In view of these decisions, it cannot be said as a matter of law that a space of 50 feet at a speed of 45 miles per hour, under traffic conditions existing here, is unreasonable.

The general rule is that negligence is a question of fact for the jury. It is only where the inference of negligence is irresistible that it becomes the duty of the court to decide upon it as a matter of law, and where the inferences to be drawn are in any degree doubtful the only proper rule is to submit the matter to the jury under proper instructions.

As is so often stated in instructions to juries in negligence cases, negligence is not an absolute term but a relative one, and in deciding whether there was negligence in a given case the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence.

It would serve no useful purpose to review the decisions cited by plaintiffs as the factual situations in those cases were different from those in the instant case. Each case must be considered on its own facts. Bearing in mind the familiar rules hereinbefore mentioned, we cannot say that the evidence in the instant case compelled a finding that defendant was guilty of negligence as a matter of law. The jury could have concluded that since defendant was about 50 feet behind the car ahead of him and that car was 50 feet from plaintiffs' car when the other car began to turn out, defendant's car was about 100 feet from plaintiffs' car when he first observed it, and since defendant's car made 65 feet of skid marks to the point of impact, that therefore defendant must have been looking down the highway at the time the car ahead of him pulled out to pass. Defendant testified that he did not see plaintiff's car until he was several car lengths from it, and that as soon as he saw it he applied his brakes; that he could not swerve into the inside lane because of traffic going in the same direction. We believe that the question of whether or not defendant was guilty of negligence was one of fact for the jury.

Furthermore, even if the evidence compelled a finding that defendant was negligent as a matter of law, we do not believe

that the evidence compels a finding that plaintiff Clinkscale was free from negligence as a matter of law.

Defendant points out that the record shows that on the day of this accident the plaintiff, Mr. Clinkscale, before starting on this trip to San Francisco, had gas and water put in his automobile, presumably in Broderick, and that on the way down by the time he reached Fairfield, California, his engine acted "funny" and "kind of stubborn," as if it were going to cut out on him, so he pulled into a service station near Fairfield and the attendant put water into the radiator. Clinkscale knew that the car was hot at this time and observed that the heat gauge was high; that although while en route home he was traveling from a cool area into a warm area, appellant Clinkscale testified that at no time after leaving Fairfield on the way to San Francisco did he ever check the temperature gauge on his automobile, that he knew he had to cross the Yolo Causeway, and that he did not make any observations with respect to that temperature gauge before crossing the causeway; that he passed right by the large Standard Oil service station at Davis and apparently gave no thought to the advisability of checking his temperature gauge or checking the water in his radiator before leaving that area to pass on down the highway towards the causeway. Defendant argues that since Clinkscale testified that he did not look at his temperature gauge after leaving Fairfield on the way down to San Francisco, and since he testified that he did not look at that gauge before crossing the causeway, the jury could have believed that he was contributorily negligent because he in fact did not look at that gauge, or they could have concluded that he did look at the gauge and was not telling the truth with respect to what it indicated, but instead decided to try to make it across the causeway, and that the jury could reasonably conclude from the evidence that in view of the difficulty which Clinkscale had on the way down to San Francisco, and from the other facts herein outlined, Clinkscale did not act with ordinary care in attempting to cross the causeway under these circumstances, and that therefore his car was not "disabled" within the language of section 582 of the California Vehicle Code, so as to exempt him from contributory negligence.

The defendant argues further that the jury could have concluded that the plaintiff Clinkscale was contributorily negligent in failing to station himself farther to the rear of his automobile in order to give approaching motorists, including

the defendant, more time and distance in which to discover the fact that his car was stopped and to either stop or turn into the inside lane, and might have prevented the accident.

Defendant testified that he did not see plaintiffs' automobile until the car ahead of him turned out, and while it is possible that defendant might not have observed plaintiffs' automobile if plaintiff Clinkscale had been stationed 50 or 75 feet further west, it is also probable that he would have observed it in time to have avoided the accident. Plaintiff Mr. Clinkscale stationed himself at the left rear fender while plaintiff Mrs. Clinkscale remained seated in the front seat of the automobile. In view of the fact that it was 5 p.m. on a hot Sunday afternoon when the traffic was heavy, we cannot say that the jury may not have properly concluded that under all the circumstances plaintiffs failed to exercise ordinary care in failing to give greater warning to oncoming traffic.

We believe that whether or not plaintiff Mr. Clinkscale was guilty of contributory negligence was a question of fact for the jury and we are unable to agree with defendant's contention that reasonable men could only draw the conclusion that plaintiffs were not free from contributory negligence.

We are frank to state that in our opinion the record indicates strongly that the evidence preponderates in favor of plaintiffs on the issue of defendant's negligence as well as on the issue of the contributory negligence of plaintiffs, and that in view of the verdict of the jury the case was one in which the trial court might well have granted a new trial. A trial judge in passing upon a motion for a new trial is not bound by the same rules as an appellate court. We quote what was said in *Brush* v. *Pacific Elec. Ry. Co.*, 58 Cal.App. 501, at page 506 [208 P. 997] :

"But while an appellate court will not review a verdict where the evidence shows a substantial conflict, the trial court is guided by very different considerations. If the trial judge, notwithstanding a conflict in the testimony, is satisfied that the verdict is against the weight of the evidence, he may, indeed he should, grant a new trial, although upon the same conflict an appellate court would be bound by the verdict. And even though there be no conflict in the testimony, the probative force and effect of the evidence is ultimately for the determination of the trial judge upon the hearing of a motion for a new trial. (*Meinberg* v. *Jordan*, 29 Cal.App. 762 [157 P. 1005, 1007].) The judgment of the trial judge is not based upon the cold record which comes to an appellate

court. He hears the evidence and has ample opportunity to observe the demeanor and manner of the witnesses and to judge their credibility. If, therefore, he is dissatisfied with the verdict and is of the opinion that it clearly is against the weight of the evidence, he may set it aside and grant a new trial even though there be substantial evidence to support the verdict. He 'is in a position to determine between the apparent and the real, to detect the fallacy of specious testimony which may have misled the jury, but which his wider experience enables him to readily comprehend. . . . It is for these and other reasons which might be mentioned that a wide discretion is accorded to trial courts in the disposition of motions for new trial.' (*Bates* v. *Howard,* 105 Cal. 178 [38 P. 715].) Though the parties are entitled to the judgment of the jury in the first instance, they are, upon a motion for a new trial, 'equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence.' (*Green* v. *Soule,* 145 Cal. 102 [78 P. 337].)''

So while we regard the instant case as one in which the trial court might well have granted plaintiffs' motion for a new trial, we are satisfied that it cannot be held as a matter of law that the judgment lacks substantial support in the record.

Plaintiffs contend that the doctrine of last clear chance should have been applied by the trial judge on the motion for new trial, and that he should have set aside the verdict as a matter of law. ▆▆ Under that doctrine the plaintiffs must be negligent and as a result of their negligence they must be in a position where they cannot escape from their perilous position by the exercise of ordinary care, and the defendant must be aware of their danger so that he realizes, or ought to realize, that the plaintiffs are unable to escape, and the defendant must then have a clear chance to avoid injuring the plaintiffs by the exercise of ordinary care. The defendant testified that as soon as he observed the plaintiffs he applied his brakes hard and attempted to stop his automobile, and that he could not swerve into the inside lane because of the condition of the traffic to his left. Whether or not he had the last clear chance to have avoided the accident is quite doubtful, but in any event this court cannot say as a matter of law that he did have such an opportunity.

Counsel for plaintiffs states: ''The doctrine of last clear chance should have been applied in this case, and even if the doctrine was too complex for the Jury to apply, the Judge on the motion for a new trial should have applied the doctrine

as a matter of law, and should have set aside the verdict of the Jury."

It is apparent from the record that the doctrine of last clear chance was not relied upon by plaintiffs at the trial for they offered no instruction on it. No decision has been cited which holds that it is reversible error for a court to fail to give such an instruction when it is not offered or requested. While the trial court upon the hearing of the motion for a new trial could have considered the doctrine of last clear chance along with all other rules of law and might well have granted the motion for a new trial on the ground that the verdict was against the weight of the evidence, we cannot say that upon the record in the instant case the court erred in not giving an instruction on the doctrine of last clear chance or in not granting a new trial upon that ground.

Plaintiffs next contend that certain erroneous and highly prejudicial instructions were given by the court.

Plaintiffs contend that the giving of Instruction Number 10 was prejudicially erroneous because it interjected issues into the case which were not present. ██ This instruction reads:

"If you believe from the evidence that Mr. Clinkscale was careless and negligent in the manner in which he stopped and parked his Studebaker automobile on the Yolo Causeway prior to the accident and that said carelessness and negligence on his part proximately contributed to this accident, then I instruct you that the plaintiffs, Mr. and Mrs. Clinkscale, cannot recover from Mr. Germershausen."

However, this instruction advised the jury that if they found that the car was "stopped and parked" in a careless and negligent manner and if this carelessness and negligence proximately contributed to the accident, then the plaintiffs could not recover. It contained both the element of negligence and the element of proximate cause, and was a correct statement of the law. The question of whether or not the plaintiffs were justified in stopping and parking on the causeway under all of the circumstances in the case was a question of fact for the jury, and the instruction does not relate only to the manner in which the car was parked on the causeway, but it relates to the issue of whether or not the car should have been stopped and parked before it got onto the causeway.

Plaintiffs complain also that there was prejudicial error in giving Instruction Number 11 which reads:

"If you believe from the evidence that William Clinkscale

was careless and negligent in the manner in which he attempted to warn Mr. Germershausen of the fact that the Studebaker automobile was stopped on the Yolo Causeway and if you further believe that said careless [sic] and negligence on the part of said William Clinkscale contributed proximately to the accident, then I instruct you that the plaintiffs, Mr. and Mrs. Clinkscale can not recover from Mr. Germershausen.''

This instruction related to the warning which was given by Mr. Clinkscale to the defendant, and that was an element in the case. The instruction correctly stated the law and contained both the elements of negligence and proximate cause.

If plaintiffs' contention that Clinkscale was free from negligence as a matter of law was upheld, then Instructions 10 and 11 would have been improper. However, since we have come to the conclusion that Clinkscale's negligence was a question of fact, these instructions correctly presented the issues to the jury.

Far more serious is plaintiffs' contention that the court committed prejudicial error in giving Instruction Number 17. This instruction which is based on section 582 of the Vehicle Code is identical with Instruction Number 143 of B.A.J.I., Civ., '50 Supp., which reads as follows:

''At the time of the accident involved in this case, our Vehicle Code provided as follows:

'' 'Upon any highway in unincorporated areas no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the main traveled portion of the highway when it is practicable to stop, park or so leave such vehicle off such part or portion of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway. This section shall not apply upon a highway where the roadway is bounded by adjacent curbs.

'' 'This section shall not apply to the driver of any vehicle which is disabled in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle on the main traveled portion of a highway.'

''In weighing the evidence in this case, you will be guided by a rule now to be stated: If and when it has been established by the evidence that a person stopped, parked or left standing any vehicle, whether attended or unattended, upon the main

traveled portion of a highway in an unincorporated area, or that he stopped or parked or left standing a vehicle upon the main traveled portion of such a highway in such a position as not to leave an unobstructed width of the highway opposite said vehicle for the free passage of other vehicles or in such a place that a clear view of said vehicle was not available from a distance of 200 feet in each direction upon the highway, such evidence is a prima facie showing of negligence on the part of the person who so handled the vehicle and will support a finding that he was negligent in such conduct, unless that showing together with any other proved facts that support it, fails to preponderate over evidence that it was impracticable to stop, park, or leave the vehicle off the main traveled portion of the highway or evidence that the vehicle was disabled in such a manner and to such an extent that it was impossible to avoid stopping and temporarily leaving it on that portion of the highway or at a place where the clearance of unobstructed highway opposite it or the clear view of it from the highway was not such as is required by the law that I just read to you.

"To state the point in another way: The law places upon a person who stops, parks or leaves standing a vehicle on a highway in an unincorporated area, the risk of being found to have been negligent in so doing, unless he affirmatively shows the impracticability or the impossibility, as just stated, of handling the vehicle otherwise. If, however, he makes such a showing, the inference of negligence to which I previously referred may thereby be disproved and removed from the case.

"The accident involved in this case occurred in unincorporated area."

Plaintiffs argue that since defendant had the burden of proving contributory negligence, the above instruction, which required that the plaintiffs explain why the car was stopped on the causeway, shifted the burden of proof to the plaintiffs on this issue, and therefore violated the fundamental rule of law with respect to the burden of proving contributory negligence. However, we think it is clear that the instruction does not in any way shift the burden of proof either as to the negligence of defendant or the contributory negligence of plaintiffs.

Plaintiffs also argue that the instruction was improper because section 582 of the Vehicle Code specifically states that it "shall not apply upon a highway where the roadway is bounded by adjacent curbs." ▆▆▆ It therefore becomes necessary to determine whether or not the roadway across

the causeway is "bounded by adjacent curbs." On the north side of the causeway is a barrier consisting of steel pipes imbedded in concrete with openings in the concrete so that the water can flow off the highway. On the south side is a 2-foot walkway with wooden boards about 8 inches high separating the walkway from the vehicular part of the highway.

The Vehicle Code itself does not give any definition of the term curb, no doubt because it is a term which is so commonly used and so generally understood. Nor have we found any California case that defines the term. However, what seems to us to be a correct definition is given by the Supreme Court of Illinois in *Lyman* v. *Town of Cicero,* 222 Ill. 379 [78 N.E. 830], as follows:

"The common meaning of the word 'curb,' as applied to a street, is a stone or row of stones, or a similar construction of concrete, wood, or other material, along the margin of the roadway, as a limit to the roadway and a restraint upon and protection to the adjoining sidewalk space."

And in *Domke* v. *Cunning,* 62 Wash. 629 [114 P. 436], the Supreme Court of Washington said, at page 438 [114 P.]:

"The respondent pleaded and proved an ordinance of the city of Spokane making it the duty of a person driving an automobile on the streets of the city, 'upon turning the corner of any street,' to 'leave a space of at least six feet between the curb and the . . . automobile. . . .' It appeared that on the lot fronting on the street where the accident happened a building was being erected; that debris therefrom had been piled in the corner of the street around which a fence or barricade had been constructed, and pedestrians traveling along the street on reaching the corner would be obliged to leave the regular walk, step into the street, and walk around the outside of this fence or barricade. The court charged the jury that this fence became the curb within the meaning of the ordinance, and that the appellant was guilty of violating the ordinance when he drove along the street if he did not keep his automobile six feet therefrom. This instruction is assigned as error, but we think it correct. The purpose of the ordinance was to keep vehicles in rounding corners out of the path usually taken by foot passengers, and the word 'curb' was used as the most convenient term to make one of the boundaries of the path, and not in a technical sense. When a fence was used to mark the boundary of this path, it became the curb within the meaning of the ordinance."

 Defendant argues that the question of whether or not

the causeway is bounded by curbs was a question of fact for the jury to determine. However, we believe that it must be held as a matter of law that the highway across the causeway is a highway where the roadway is bounded on the south side by adjacent curbs. We can reach no other conclusion when we consider the definition of ''curbs'' and the undisputed physical facts. If the Legislature had intended to make a distinction between curbs on a highway across a causeway or bridge and those on other roadways it could easily have done so. If we are correct in this conclusion, then section 582 does not apply to the roadway here involved and the instruction should not have been given.

We granted a rehearing in this case because we wished to reconsider the question of whether the error in giving the foregoing instruction was sufficiently prejudicial to require a reversal of the judgment. In our former opinion we did not take into consideration the provisions of section 586 of the California Vehicle Code, which, so far as here pertinent, reads:

''No person shall stop, park or leave standing any vehicle whether attended or unattended, except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or traffic control signal device, in any of the following places: . . . (j) In a tube or tunnel or upon a bridge.''

No instruction was offered or given on said section 586, but in considering whether the giving of defendant's proposed instruction Number 17 embodying the provisions of section 582 was reversible error we must take into consideration the above quoted provisions of section 586.

It cannot be doubted that the roadway across the causeway must be regarded as a bridge within the meaning of the provisions of section 586. Therefore, the stopping of an automobile on the causeway would be prima facie evidence of negligence under section 586. And while section 582 was inapplicable because it specifically states that it shall not apply upon a highway where the roadway is ''bounded by adjacent curbs,'' it is difficult to understand how plaintiffs could have been prejudiced by the instruction given by the court on it, in view of the provisions of section 586. For the instruction given told the jury that section 582 should not apply to the driver of any vehicle which is disabled in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle on

the main traveled portion of a highway; and further told the jury that "The law places upon a person who stops, parks or leaves standing a vehicle on a highway in an unincorporated area, the risk of being found to have been negligent in so doing, unless he affirmatively shows the impracticability or the impossibility, as just stated, of handling the vehicle otherwise, but that if he makes such a showing the inference of negligence "may thereby be disproved and removed from the case."

We believe that the instant case presents a question which is peculiarly within the purview of section $4\frac{1}{2}$ of article VI of our state Constitution which provides:

"No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

To hold that the giving of said instruction Number 17 was reversible error would in our opinion be to fly in the face of this section of the Constitution, for said instruction was really more favorable to plaintiffs than an instruction embodying the provisions of section 586 would have been. The evidence on all phases of the case was fully presented to the jury and would support a verdict for either party, and we are satisfied that no miscarriage of justice resulted from the giving of said instruction.

As to the cross-appeal of defendant from the judgment in favor of plaintiffs on defendant's cross-complaint, it is stated in defendant's brief that such appeal was taken "purely to preserve cross-complainant's right, in the event that this Court should reverse the judgment in favor of the defendant and against the plaintiffs." However, it is clear that there is ample evidence in the record to support the implied finding of the jury that defendant was guilty of contributory negligence and that the judgment against defendant upon his cross-complaint should be affirmed.

The judgment in favor of defendant upon plaintiffs' complaint and the judgment in favor of plaintiffs upon defendant's cross-complaint are affirmed.

Van Dyke, P. J., and Peek, J., concurred.