[No. A035248. First Dist., Div. Three. July 16, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN TERRANCE HARVEY, Defendant and Appellant.

768

**COUNSEL**

Scott L. Fielder, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Dane R. Gillette and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BARRY-DEAL, J.**—On appeal from a judgment of conviction for cultivation of marijuana and a sentence of two years' imprisonment, appellant John Terrance Harvey contends that the court erred when it refused to continue his sentencing hearing and when it considered certain facts in reaching its sentencing decision. We find no error and affirm the judgment.

### Procedural Background

On November 18, 1985, a complaint was filed charging appellant and his codefendant, Debra Ann Cavnar, with cultivation of marijuana (count I) and possession of marijuana for sale (count II). (Health & Saf. Code, §§ 11358, 11359.) On April 16, 1986, pursuant to a negotiated disposition, appellant entered a plea of guilty to the crime charged in count I, count II was dismissed as to each defendant, and Ms. Cavnar was permitted to apply for diversion.

On May 12, 1986, the court sentenced appellant to the middle term of two years' imprisonment for cultivation of marijuana. This timely appeal followed.

*Facts*

The probation report contains the following facts, which appellant does not dispute.

On September 27, 1985, Ms. Cavnar and appellant had been living together for about two years. Officer Vern Huggins of the sheriff's department went to their home to question Ms. Cavnar in his investigation of a burglary in which Ms. Cavnar was a suspect. As the officer approached the residence, he observed marijuana plants four to six feet high. When Ms. Cavnar allowed Huggins into the home, he observed what appeared to be marijuana drying on top of a wood stove in the living room. Ms. Cavnar stated the garden was appellant's, and, after waiving her *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), she talked about the marijuana and gave Huggins a canister about half full of dried marijuana.

Officer Huggins observed what appeared to be an Uzi, a fully automatic weapon, on top of the refrigerator. Ms. Cavnar stated it belonged to appellant and gave the officer permission to search the house. She gave Huggins another can of marijuana. He obtained a search warrant and served it the same day. While the search was in progress, Officer Huggins received a telephone call from appellant, who admitted that all the items found in the home were his and stated that Ms. Cavnar had nothing to do with the marijuana. Huggins received a second call from appellant in which appellant threatened to kill him and said, " 'your family is history.' "

The search revealed numerous containers of marijuana in the residence and in a shed, as well as 15 growing marijuana plants among other garden plants. The garden was contained within an electric fence, and it was booby-trapped with razor blades within the marijuana stalks and boards with protruding nails partially covered by weeds.

Officers also found scales, a "pay and owe" accounting which included names, and three weapons with live ammunition. According to Officer Huggins, this indicated a sophisticated operation. The gross weight of marijuana found in the residence, excluding plants, was well over 1,000 grams; it had a value of about $3,000.

Appellant admitted to the probation officer that he grew the marijuana, stating it was a hobby. He denied being involved in sales and said he knew nothing of the pay and owe sheets. He also denied making the second, threatening phone call.

Appellant had a prior felony conviction in 1972 for cultivating marijuana.

*Discussion*

■■■ *Denial of Continuance.* The probation report was dated April 30, 1986. At the sentencing hearing of Monday, May 12, defense counsel stated that he had filed a motion to continue that hearing the previous Thursday morning (May 8) and that he had not had sufficient time to discuss the contents of the probation report with appellant, who was present in court. He asked for additional time "in order to file a statement in mitigation and present other evidence to the court at the sentencing hearing." The court stated it would not grant a continuance but would trail the matter to the end of the calendar. Appellant claims this ruling was prejudicial error. We disagree.

Penal Code section 1050, as amended in 1985,[1] governs the procedure for granting continuances in criminal cases. It begins with a strong policy statement in favor of setting criminal proceedings "at the earliest possible time." (Pen. Code, § 1050, subd. (a).) Subdivision (b) of Penal Code section 1050 requires that a party seeking a continuance give written notice to the opposing party "at least two court days before the hearing sought to be continued" and that such notice include a showing of specific facts which necessitate the continuance. Under subdivisions (c) and (d), a party may seek a continuance without complying with the notice requirements of subdivision (b), and the court may grant it if the party first shows good cause for failure to so comply. In no event can a continuance be granted without a showing of good cause. It cannot be granted for the convenience of the parties or upon stipulation. (Pen. Code, § 1050, subd. (e).)

■■■ Thus, where a party seeking a continuance fails to comply with the notice requirements, the trial court must make a two-step decision. It must first determine whether there was good cause for failure to comply with those requirements. If there was not good cause, the court must deny the motion. (Pen. Code, §§ 1050, subds. (c), (d).) If the court finds there was good cause for failure to comply, it must then decide whether there is good cause for granting a continuance.

Our task upon review of denial of the motion under the circumstances presented by the case at bench entails several steps. First, we must examine the record to see whether defense counsel complied with the notice require-

---

[1] Penal Code section 1050 was also amended in 1986 to specify procedures for handling calendar conflicts.

ments and whether the court erred in holding that he did not. Second, if defense counsel complied with the notice requirements and the court erred in holding otherwise, we must decide whether the error was prejudicial. Specifically, we must determine whether the perceived need of the defense for a continuance was satisfied in some other way. If it was, no prejudice flowed from the error on the procedural question. On the other hand, if defense counsel failed to give proper notice and the trial court properly so found, denial of the motion may have been appropriate absent a showing of good cause.

■■■ The court below found that defense counsel had failed to comply with subdivision (b) of section 1050 when he filed the motion on Thursday to continue a Monday hearing. The court determined that Thursday was only one court day before Monday and therefore that it had no alternative but to deny the motion for failure to meet the notice requirements. This was incorrect for two reasons. First, the court unequivocally stated that it had no discretion to grant a continuance where counsel filed his notice too late. The statute expressly provides otherwise. (Pen. Code, § 1050, subds. (c), (d).) Second, the court erred in its calculation of "two court days before."

■■■ In computing time, the first day is excluded and the last is included. (Gov. Code, § 6800; Code Civ. Proc., § 12.) Whether one counts forward to a date or backward from a date, the method of counting remains the same. The Supreme Court established this principle over 100 years ago in *Misch* v. *Mayhew* (1876) 51 Cal. 514. Misch had brought an action contesting a judicial election because of illegal votes. Former Code of Civil Procedure section 1116 provided that no evidence of illegal votes could be given by a party unless the adverse party was given "at least three days before trial, a written list of the number of illegal votes he [or she] expects to prove, and by whom given." (*Misch, supra,* at p. 515.) The list was served on December 7, and trial commenced on December 10, 1875. The trial court sustained an objection on the ground that delivery of the copy was not at least three days before trial. (*Ibid.*) The Supreme Court reversed, stating, "The language of [the section in question], which fixes the time when the list of alleged illegal voters shall be served, is *equivalent to a requirement that the opposite party shall have three days' notice* of the illegal votes which the party serving the list expects to prove at the trial. The case is, therefore, covered by section 12 of the [Code of Civil Procedure], and a list served on the seventh of December could properly be relied upon and proven at the trial on the tenth of December." (*Id.,* at p. 516, italics added.)

Similarly, in *Bates* v. *Howard* (1894) 105 Cal. 173 [38 P. 715], the court dealt with former Code of Civil Procedure section 1373, which mandated 10 days' notice of hearing. Citing *Misch* v. *Mayhew, supra,* 51 Cal. 514, the

court held sufficient the posting of notice on July 12, giving notice of a hearing on July 22. (*Bates, supra,* at p. 182; accord *Estate of Wright* (1918) 177 Cal. 274, 276 [170 P. 610] [posting notice on Jan. 5, for hearing Jan. 15].)

"A day is the period of time between any midnight and the midnight following." (Gov. Code, § 6806.) In computing days, fractions are not counted but are deemed entire days. For example, in *Estate of Espinosa* (1918) 179 Cal. 189 [175 P. 896], the court addressed former Code of Civil Procedure section 1763, which provided that an alleged incompetent person "must be given notice of the time and place of the hearing 'not less than five days before' the appointed time." (*Estate of Espinosa, supra,* at p. 190.) It was asserted on appeal that where an act must be done a certain number of days "before" an event, in counting, the day of the act and the day of the event both should be excluded. The court rejected this claim and held that service of citation on February 23, for a hearing on February 28, was sufficient. (*Ibid.*; see *Cosgriff* v. *Election Commissioners* (1907) 151 Cal. 407, 409 [91 P. 98] ["[E]very day, and every part of that day is . . . *one day before* every part of the succeeding day."]; accord *Architects & Contractors Estimating Service, Inc.* v. *Smith* (1985) 164 Cal.App.3d 1001, 1006 [211 Cal.Rptr. 45]; *Kelly* v. *State Personnel Board* (1939) 31 Cal.App.2d 443, 445 [88 P.2d 264]; contra *R. E. Folcka Construction, Inc.* v. *Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 52-57 [236 Cal.Rptr. 202]; *Mitchell* v. *County of Orange* (1985) 165 Cal.App.3d 1185, 1190 [211 Cal.Rptr. 563]; see also *Iverson* v. *Superior Court* (1985) 167 Cal.App.3d 544 [213 Cal.Rptr. 399] [discussing "court days" as compared to calendar days].)

■ In the case at bench the sentencing hearing was set for Monday, May 12. Thursday, May 8, was two court days before Monday, and the motion filed May 8 was timely. Therefore, the court erred in finding that defense counsel did not file his motion to continue the hearing in a timely fashion.

Nevertheless, appellant has not shown prejudice from the error. Counsel did not make a showing of good cause for a continuance on the record. Although counsel stated that he had not had a chance to discuss the contents of the probation report with appellant and that he wanted time to present a statement in mitigation and to present "other evidence," nowhere does it appear when he received the probation report,[2] what he might have

---

[2] Penal Code section 1203, subdivision (b), provides in pertinent part: ". . . The report shall be made available to the court and the prosecuting and defense attorney at least nine days prior to the time fixed by the court for the hearing and determination of the report, and shall be filed with the clerk of the court as a record in the case at the time of the hearing. The time within which the report shall be made available and filed may be waived by written stip-

included in the statement of mitigation, or what the other evidence might have been. (See *Brown* v. *Superior Court* (1987) 189 Cal.App.3d 260, 264 [234 Cal.Rptr. 416].) Neither is there a showing how the alleged lack of time to communicate with appellant hampered his ability to present factors in mitigation or to correct misstatements in the probation report.

The trial court trailed the matter, giving counsel time to consult with appellant. Appellant then testified extensively, apparently correcting the errors which he alleged were present in the probation report. For example, he stated that his prior conviction was for possession of marijuana, not cultivation, although he had possessed "half a dozen" plants, and he explained that one of the weapons in his house was not an automatic Uzi, but a "semiautomatic look-alike." He also testified that he had entered into plea negotiations because the district attorney threatened to charge him with possession of firearms by a felon.

Counsel then orally renewed his motion for a continuance, arguing that the probation report was biased, that it contained improper references to appellant's apparent cultivation of marijuana for sale, and that it should be rewritten by an unbiased probation officer. The court denied the motion and proceeded to sentence appellant in accordance with a negotiated disposition. The basis of the motion was counsel's desire to apprise the court of alleged misstatements in the probation report. He was given ample opportunity to make this showing, and he did so. We therefore find no prejudice flowing from the court's miscalculation and consequent finding that appellant's motion for a continuance was untimely. For the same reasons, we must reject appellant's claim of inadequacy of trial counsel. (See generally, *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

■ *Sentencing Factors.* The court cited three factors in support of its decision to deny probation: appellant possessed weapons at the crime scene and booby-trapped the garden, indicating that he is dangerous; the quantity of marijuana, the scale, and the accounting records, together with the apparent willingness to use force, indicated professionalism; and appellant had prior criminal conduct including a felony. The court also cited appellant's possession of weapons and his apparent readiness to protect his marijuana business with them as a factor in its decision to impose the middle term.

Appellant cites the court's use of his weapons possession as error under *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], in

ulation of the prosecuting and defense attorneys which is filed with the court or an oral stipulation in open court which is made and entered upon the minutes of the court. . . ." Appellant does not claim that the report was untimely.

which the Supreme Court held improper the trial court's use of facts of a dismissed count as factors in aggravation. (*Id.,* at pp. 757-758.) The robbery count had been dismissed as part of a negotiated plea, and the Supreme Court found that to use facts of that crime would have violated the understanding that defendant would suffer no adverse sentencing consequences by reason of the facts of the dismissed count. (*Id.,* at p. 758.) The court carefully distinguished the situations where the facts of the dismissed or uncharged count are transactionally related to the remaining counts. A plea bargain in such case does not preclude the court from examining all the facts of the admitted offense in order to determine the gravity of the offense and the severity of punishment. (*Ibid.*)

The case at bench comes within the last mentioned rule. Appellant stated that he entered into the plea negotiation to avoid a charge of possession of a firearm by a felon. Nothing in the record indicates that the trial judge considered the weapons possession in connection with appellant's convicted felon status, which may well have violated the *Harvey* rule. Rather, the record shows that the trial court took the possession of weapons into account only as it related directly to the crime which appellant admitted committing. No error occurred.

The judgment is affirmed.

Scott, Acting P. J., and Merrill, J., concurred.