Filed 6/30/15  P. v. Vasquez CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>ENRIQUE JAIME VASQUEZ,<br><br>      Defendant and Appellant. | C073989<br><br>(Super. Ct. No. 11F01099) |

Defendant Enrique Jaime Vasquez was convicted of 18 separately charged counts of sexually abusing his underage stepdaughter over the course of several years in various locations.  On appeal, he contends the trial court abused its discretion by (1) ordering the jury to continue deliberations after the jury announced it was deadlocked and (2) denying his motion to continue the sentencing hearing for him to retain counsel to pursue a motion for new trial.  We conclude the trial court did not err in ordering continued deliberations because there was a "reasonable probability" they would result in a verdict, or in denying defendant's request for a continuance because he made it at the last minute

and did not present evidence a continuance would actually enable him to retain counsel. Therefore, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with lewd conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a) -- counts 1, 3, & 15),[1] forcible lewd conduct with a child under the age of 14 (§ 288, subd. (b)(1) -- counts 2, 4-5, 7-9, 12, & 17-20), oral copulation or sexual penetration with a child age 10 or younger (§ 288.7, subd. (b) -- counts 6, 10-11, & 13-14), and sexual intercourse with a child age 10 or younger (§ 288.7, subd. (a) -- count 16). Each count charged in the information was specifically alleged to have taken place at an enumerated location (defendant's car and different residences in the Rosemont neighborhood of Sacramento) and during an enumerated timeframe (spans of a year or years depending on the victim's age at the time of the alleged act). We discuss the underlying facts substantiating the charges only as necessary to address the issues raised in this appeal.

A jury was sworn in on April 4, 2013, and the trial was held on seven court days, including multiple days of testimony by the victim, her eyewitness younger sister, dueling expert witnesses, and several character witnesses. The testimony of the victim and her younger sister described the multiple alleged acts of molestation, with sometimes unclear references to the victim's age at the time of the act or where the act was committed. The victim's stepmother and forensic investigators also recounted the information they had obtained from the two minors in various conversations and interviews. Character witnesses called by defendant (mostly defendant's adult children) provided confusing testimony regarding when defendant and the victim lived in the various enumerated residences. Thus, the jury was presented with a hodgepodge of

---

[1]     Undesignated statutory references are to the Penal Code.

evidence about where events occurred -- necessary factual findings based on the allegations of the information.

Prior to deliberations, the jury was instructed, in conformity with CALCRIM No. 3550: "It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict, if you can. [¶] Each of you must decide the case for yourself but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong. Do not change your mind just because other jurors disagree with you."

Deliberations began on April 16, 2013. On the first day, the jury asked for clarification whether the victim testified or reported her eyewitness younger sister knocked on the door during one of the charged acts of child molestation. On the second morning of deliberations, the jury requested a readback of a forensic investigator's testimony regarding the sister's interruption of the act and about the use of a vibrator defendant provided to the victim. They also asked about the presence of the victim's other sister during the interrupted act. That day, the court reporter read back the testimony regarding all these questions.

The following afternoon, the third day of deliberations, the jury informed the court it was deadlocked as to all counts. The court released the jury for the day and ordered them to return the following day to continue deliberations, saying: "It was a long trial. There are a lot of counts. I'm not going to release you from this. You're going to continue deliberating. So nine o'clock tomorrow morning, and we'll see you tomorrow." After the jury left the courtroom, defense counsel expressed a concern that since the court did not specify the jury was not going to be released "at that time," the jurors would be left with the impression they must reach a verdict. The court dismissed counsel's concern as unfounded because it had previously explicitly instructed the jurors they have an option of not reaching a verdict.

3

The jury continued deliberations the following day (the fourth day) and asked for readback of testimony relating to the victim seeing defendant naked, the victim's head hitting the steering wheel while she orally copulated defendant in the car, the longest period of time she was touched inappropriately, the victim's recounting of two separate incidents, and her testimony about her mother's witnessing two separate molestation events. After the readback of this testimony the following day (the fifth day of deliberations), the jury informed the court it was still unable to render a unanimous verdict.

After conferring with counsel in chambers, the court noted (outside the presence of the jury) the jury had "been working hard on this and [had] deliberated pretty close to five days." The jury's questions did not indicate any legal issues but seemed to indicate questions of credibility of the victim and her sister. Upon questioning, the foreperson informed the court he believed the jury was hopelessly deadlocked and further deliberations would not help, nor would different or additional instruction, readback, or deliberation tactics. The jury had voted as to all counts and as to each individual count three times. The court polled the jury whether further deliberations could be useful. One juror responded that, with additional deliberation and a different approach, it was possible they may reach a verdict. None of the other jurors believed further deliberations would be fruitful.

Based on the single juror's response that further deliberations may be useful, the court instructed the jury pursuant to *People v. Moore* (2002) 96 Cal.App.4th 1105 (*Moore*), as follows: "It has been my experience on more than one occasion a jury which initially reported it was unable to reach a verdict was ultimately able to arrive at verdicts on one or more of the counts before it. To assist you in your further deliberations, I'm going to further instruct you as follows: [¶] Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict, regardless of how long it takes to do

4

so. [¶] It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors. [¶] In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs. [¶] You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong. [¶] Fair and effective jury deliberations require a frank and forthright exchange of views. [¶] As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. [¶] It is your duty to -- your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment. [¶] Both the People and the defendant are entitled to the individual judgment of each juror. [¶] As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. May I suggest that since you have not been able to arrive at a verdict using the methods you have chosen, that you consider changing the methods you have been following or at least temporarily -- at least temporarily do so and try new methods. [¶] For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position and vice versa. This might enable you to better understand the others' positions. [¶] By suggesting you should consider changes in your methods of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I merely find that you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views, and consider and understand the views of the other jurors." The court read instructions on general obligations of a juror, which stressed jurors must follow the law, discuss issues frankly, respect and consider the

5

views of other panelists, and reach a verdict if possible without violation of conscience or individual judgment.  The court then ordered the jury to continue its deliberations.

Defendant objected to the provision of the *Moore, supra,* 96 Cal.App.4th 1105 instruction as inappropriate given the length of time the jury had deliberated, the jury's two separate deadlock declarations, and only one juror indicated further deliberations would be helpful.[2]

On April 22, 2013, one of the jurors informed the court of pre-planned vacation travel for April 25 through 27, 2013, and on April 23, 2013, another juror fell, spraining both ankles.  The court recessed the jury for the remainder of the day.  On April 24, 2013, the court learned the injured juror would not be able to participate in deliberations.  The court informed counsel of the altered circumstances, and proposed replacing the injured juror with an alternate, suspending deliberations at noon on April 25, 2013 to accommodate the travelling juror, and resuming deliberations the following Monday, April 29, 2013.  There being no objection, on April 24, 2013, the court instructed the newly composed jury and ordered them to begin deliberations anew.

On April 29, 2013, the newly-formed jury asked the court whether it had to conclude the acts charged in counts 19 and 20 had to take place at a specific charged location or if the events merely had to take place during the charged time period.  The following morning, April 30, 2013, after conferring with counsel, the court responded that because the events were alleged to have taken place at that location at a specific time, the jury could only return a guilty verdict on those counts if the jury found the acts happened at that time and at that place.  Less than an hour later, the jury informed the court it had reached verdicts.  The jury found defendant guilty of counts 1 through 18, and not guilty of counts 19 and 20.

---

[2]     This objection was made in chambers prior to the polling of the jury and was not placed on the record until April 30, 2013.

6

On June 7, 2013, at the time scheduled for the imposition of judgment and sentencing, defendant orally moved to continue the sentencing hearing to retain private counsel to investigate pursuit of a motion for new trial. Defense counsel had informed the prosecution of defendant's intent to seek a continuance three weeks earlier, and informed the court defendant's family had talked to local attorneys and were attempting to get a loan to retain someone, but they needed more time to gather the money. The prosecution opposed the motion, based on the fact nearly six weeks had passed since the jury had rendered its verdict, the case was of a sensitive nature, and the victim had appeared that day for the sentencing hearing. The court denied defendant's motion for a continuance, accepting the prosecution's reasoning and finding there would be no basis for a new trial: the case was well tried by counsel and a continuance would cause an undue consumption of time. Also, someone to evaluate whether a motion for new trial was feasible would need a complete reporter's transcript, which would not be ready for a considerable amount of time.

The court sentenced defendant to state prison for a determinate term of 84 years (the upper term of 8 years each for counts 1, 2, 4, 5, 7, 8, 9, 12, 17, and 18, and one-third of the middle term of 6 years each for counts 3 and 15) and for a consecutive indeterminate term of 100 years to life (15 years to life each for counts 6, 10, 11, 13, and 14, and 25 years to life for count 16). The court also awarded 963 days of credit and ordered defendant to pay various fines and fees.

DISCUSSION

I

*Continued Deliberations*

Defendant contends the trial court prejudicially erred in requiring the jury to continue deliberating after it had declared a deadlock. Specifically, he contends the trial court's employment of the *Moore, supra,* 96 Cal.App.4th 1105 instruction was coercive

7

in light of the trial court's earlier statement it would not release the jury after it first announced itself deadlocked. We disagree.

Section 1140 provides that "the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." " 'The determination whether there is reasonable probability of agreement rests in the discretion of the trial court. [Citations.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citation.] The question of coercion is necessarily dependent on the facts and circumstances of each case. [Citation.]" (*People v. Sandoval* (1992) 4 Cal.4th 155, 195-196.)

First, we reject defendant's assertion that the court's announcement it was "not going to release [the jury]" and its direction to the jury to "continue deliberating" after the jury announced it was deadlocked on the third day of deliberations caused the jury to believe it was required to reach a verdict. The jury spent a considerable amount of time in its continued deliberations listening to additional readback of testimony, and after two days of continued deliberations informed the court it still could not reach a verdict. Thus, it appears the continued deliberations enhanced the jurors' understanding of the case and the court's order to continue deliberating did not pressure the jury to reach a verdict based on " ' "matters already discussed and considered" ' " (*People v. Proctor* (1992) 4 Cal.4th 499, 539) or based on "considerations of compromise and expediency" (*People v. Carter* (1968) 68 Cal.2d 810, 817). Thus, contrary to defendant's assertion, it does not appear the jurors interpreted the court's direction that it was not going to release the jurors after its first pronouncement of deadlock as requiring the jury to reach a verdict.

8

Next, we turn to the court's *Moore, supra,* 96 Cal.App.4th 1105 instruction following the jury's second deadlock pronouncement. Prior to providing that instruction, the court polled the jury to determine whether further deliberations would be fruitful, and one juror indicated there was still a possibility a verdict could be reached. While defendant is correct the jury had been deliberating for the better part of five days (less time spent in readback of testimony) by the time it pronounced itself deadlocked for a second time, this does not necessarily mean further deliberations would not help the jurors to enhance their understanding of the case. (See *People v. Proctor*, *supra*, 4 Cal.4th at p. 539.) The trial court could properly rely on a single juror's statement in determining there was a "reasonable probability" a verdict could be reached. (*People v. Carter*, *supra*, 68 Cal.2d at p. 815; see also *People v. Rodriguez* (1986) 42 Cal.3d 730, 774 [finding no coercion where the trial court instructed the jury to continue deliberating after four expressions of impasse and a note expressing the jury was " 'hopelessly deadlocked' "].)

Here, we conclude the *Moore* instruction is an appropriate and proper reminder to the jurors of their duties; it is not coercive. (*Moore*, *supra*, 96 Cal.App.4th at p. 1121.) In employing the *Moore* instruction, the trial court did not direct the jury to reach a verdict by a designated time, or indeed to reach a verdict at all. It instructed the jury to continue deliberating and offered the jury possible approaches to employ in its further deliberations. The court's actions were not coercive, even in light of the court's previous order that the jury continue deliberations. The deliberations involved numerous counts, specific factual allegations concerning the multiple times and locations of acts, and confusing testimony and statements of the victim, her younger sister, and the character witnesses that provided the evidence related to those factual allegations. The jury's repeated requests for clarification and readback of testimony support the difficulty of the factual allegations during deliberations. Based on the record, we conclude the trial court

9

did not err in directing the jury to continue deliberations after it announced itself deadlocked.

## II

### *Denial of Motion for Continuance*

Defendant contends the trial court abused its discretion in refusing to grant a continuance of the hearing to impose judgment and sentencing for defendant to retain counsel to prepare a motion for new trial. Defendant argues the court's reasons for denying the motion are erroneous because the court inaccurately assumed (1) the motion for new trial would be based on a claim of ineffective assistance of counsel as opposed to any other statutory ground for a new trial and (2) a reporter's transcript would be necessary to evaluate and prepare a motion for new trial. We conclude the trial court did not err in denying defendant's motion for a continuance.

There is a preference to reach an expeditious disposition in criminal proceedings. (§ 1050, subd. (a).) A continuance may be granted only for good cause, and trial courts have broad discretion to determine whether good cause exists. (§ 1050, subd. (e); *People v. Alexander* (2010) 49 Cal.4th 846, 934.) The denial of a motion for continuance is reviewed for abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) This standard applies to motions to continue sentencing hearings as well as requests for time to allow a defendant to retain different counsel. (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 77 [continuance to prepare a new trial motion]; *People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 [continuance to permit representation by retained counsel].) The party challenging the denial of a continuance bears the difficult burden of establishing the court's discretion was abused. (*People v. Beames* (2007) 40 Cal.4th 907, 920.) We will not disturb a ruling or decision on appeal that is correct in the law merely because it is based on the wrong reason. (*People v. Zapien* (1993) 4 Cal.4th 929, 976, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

The right to defend with retained counsel "is not absolute: it must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People v. Byoune* (1966) 65 Cal.2d 345, 346.) A continuance to obtain counsel may be denied if the defendant has been unjustifiably dilatory. (*Ibid*; *People v. Courts* (1985) 37 Cal.3d 784, 790-791.) The trial court is generally "within its discretion to deny a last-minute motion for continuance to secure new counsel." (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) " '[O]nly an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.' " (*People v. Alexander*, *supra*, 49 Cal.4th at pp. 934-935.) Additionally, where the prospect of retaining counsel is "still quite speculative at the time the motion for continuance [i]s made" the court has even greater latitude to deny the requested continuance. (*People v. Courts*, *supra*, 37 Cal.3d at p. 791, fn. 3.)

Here, defendant was aware he would be seeking a continuance at least as early as May 16, 2013, when he informed the prosecutor of his intent to seek a continuance. Notwithstanding that intention, defendant did not file a written motion (§ 1050, subd. (b)); thus, defendant could not obtain a continuance without a showing of good cause. (*People v. Harvey* (1987) 193 Cal.App.3d 767, 771.) At the hearing on June 7, 2013, defense counsel presented only the vague and unsworn statements defendant's family had called some local attorneys and the family was trying to secure financing. Defendant did not present any evidence of his specific efforts to retain new counsel, such as identifying the attorney he hoped to retain or describing the family's actions to secure financing. Nor did defendant present any assurances the family would be able to secure financing or new counsel if a continuance were granted. Accordingly, defendant did not demonstrate good cause for a continuance, and the trial court did not err in denying defendant's last-minute and unsubstantiated motion to continue judgment and sentencing.

11

DISPOSITION

The judgment is affirmed.


       HOCH     , J.


We concur:


      HULL     , Acting P. J.


      MURRAY  , J.